(133 App. Div. 449.)

BACCELLI v. NORTH RIVER STONE CO.

(Supreme Court, Appellate Division, Third Department. June 24, 1909.)

1. EXPLOSIVES (§ 2*)—USE—REGULATION—NEGLIGENCE.
 A regulation of the labor department for the use of explosives in mines and quarries, requiring the use of safety fuses, does not apply where the blasts are exploded by electricity.
 [Ed. Note.—For other cases, see Explosives, Dec. Dig. § 2.*]

2. MASTER AND SERVANT (§ 118*)—INJURIES TO SERVANT—BLASTING.
 Where certain shots were prepared for explosion by electricity in a quarry in accordance with the usual manner, and two of the blasts were exploded by a flash of lightning during a thunder storm, and plaintiff, a servant, was injured, the master was not negligent in failing to anticipate that the use of electric exploders would be dangerous in a thunder storm, in the absence of some proof that such an accident was liable to happen.
 [Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 118.*]

 Kellogg, J., dissenting.

Appeal from Trial Term, Ulster County.

Action by Germano P. Baccelli, as administrator of the estate of Michael Logreco, deceased, against The North River Stone Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Albert F. Forthmiller (George R. Salisbury, of counsel), for appellant.

Rosendale & Hessberg (Murray Downs, of counsel), for respondent.

SMITH, P. J. The action is for damages for the death of plaintiff's intestate, caused as it is claimed by the negligence of the defendant. The defendant was the owner of some stone quarries near the city of Kingston, in Ulster county. Plaintiff's intestate was engaged in blasting in said quarries. The method of procedure was to drill a hole about 16 feet deep, to put in four or five sticks of dynamite, and then to put in a cap, to which was attached a wire which ran to the surface of the ground, where, according to the tes-

timony, the wire was separated into two wires. This wire was insulated; but for an inch at the end of the wire the insulation was cut off for the purpose of making contact with a battery by which the cap was exploded. Upon the day in question eight holes had been drilled and loaded, and the wires extended above the ground exposed for about an inch, where the insulation had been cut off. The purpose was to explode these blasts about 5:30 in the afternoon. About 4 o'clock a thunder shower occurred, and it is fairly inferable that a flash of lightning caused the explosion of two of the blasts, whereby stone was thrown upon the plaintiff's intestate and he was killed. The negligence mainly urged is in the failure of the defendant to use a safety fuse in accordance with the rules claimed to be laid down by the Commissioner of Labor to regulate the safe conduct of blasting. By chapter 415, p. 461, of the Laws 1897, it is provided that:

"The Commissioner of Labor shall see that every necessary precaution is taken to insure the safety and health of employés employed in mines and quarries * * * of the state and shall prescribe rules and regulations therefor."

Thereafter the Commissioner of Labor did prescribe certain regulations, among which were as follows:

"Preparing the Charge.—Cut a piece of safety fuse to the right length and carefully insert the fresh cut end in a blasting cap."

The plaintiff's argument is that this rule of the Commissioner of Labor, made pursuant to the statute, requires the use of a safety fuse in order to explode the charge. In this, however, we think the plaintiff is in error. The safety fuse is described in the evidence as—

"an asbestos tube filled with powder. It is insulated with asbestos. It is a powder fuse insulated with asbestos. It is about three-eighths of an inch in diameter."

The manner of igniting this safety fuse is further testified to:

"You ignite the end by a match, if you are using one or two, or by a hot iron. * * * Then a man goes along and touches that off with a hot iron, and, if you have eight or ten charges to shoot, you can make the fuse longer or shorter. You make the shorter fuse for the last one you go to and the longer one at the first one. There is a whistle blown just before the man starts. A man goes along, and sticking out of the ground are the fuses I speak of, and he touches each one with a red-hot iron, and, if you have eight or ten, a man starts at each end. To use a slow fuse gives a man a chance to get away. Anything in the shape of fire dropping on the fuse would ignite it, and lightning would ignite it, and the fuse would carry the fire down into the cartridge just the same. This fuse I speak of is always of asbestos, and the inside is filled with fine powder, and when you touch that with a hot iron, or any other fire, that powder will burn down till it strikes the exploders."

It thus appears that this safety fuse is used when the blasts are exploded by fire. Its purpose is evident—to give the man who ignites the fuse full opportunity to get away before the explosion. There is no evidence that this safety fuse is ever used where the charges are exploded by electricity, and in fact the plaintiff's witness himself swears as to the method in case of the use of electricity for exploding the blasts:

"I do know about the method of firing blasts by electricity, but not in work of this kind. The method where they use electricity is to charge the hole with dynamite and put the exploder in the same way, carry two wires attached to the cap up to the surface, and tamp that charge down with sand, and after the wires are carried to the surface they are all connected to form a circuit, and when the time is ready for the discharge of the blast that is fired by electricity from a storage battery. That is the method in common use."

It thus appears that the method that was being used by the defendant was the exact method testified to by the plaintiff's witness as the method in common use when the charge was exploded by electricity. It is further evident that the explosion by means of electricity is contemplated by the labor law itself. By section 136 of that law, inserted in 1907 (Laws 1907, p. 837, c. 399), the use of electricity is to an extent regulated. The explosion of these blasts by electricity with these electric exploders must in reason be a safer method, as ordinarily it is impossible for the charge to explode until the connection is made with the storage battery, while in the use of the safety fuse the powder, which must come above the ground, is in danger of explosion from a lighted match, or from the light from a cigar or a pipe, or even from lighting itself.

The question of defendant's negligence, then, resolves itself into the single question whether the defendants were bound to anticipate that in the use of these electric exploders there was substantial danger in a thunder shower. Upon this question there is no evidence whatever. It does not appear that any precaution was in any way required by the Labor Commissioner when these electric exploders were used. Nor does it appear that in any other quarry or mine any precaution was deemed necessary. Without some such evidence we are of opinion that the accident would not naturally be expected, and is such an unusual one that the defendant should not be held to have been guilty of a breach of duty to its servant in failing to protect the ends of these wires from the effect of the lightning. In our judgment the plaintiff has failed to sustain the burden of proof, and the judgment dismissing the complaint was right.

Judgment affirmed, with costs. All concur, except KELLOGG, J., who dissents.