## HULDA E. FRISK v. CHARLES M. CANNON and Another.[1]

April 22, 1910.

Nos. 16,364, 16,365—(154, 155).

**Malpractice — Use of Electricity — Question for Jury.**

Plaintiff was placed by one of defendant physicians on an insulated platform, a conical cap was put above and in front of her head, and electricity was caused to be discharged by a static machine through the cap upon plaintiff's head. Defendant left the room. No attendant was present. Plaintiff's head was seriously burned. It is *held* that actionable negligence on part of defendant was shown.

Action in the district court for Ramsey county against Charles M. Cannon and F. E. Balcome to recover $5,000 damages for personal injuries sustained from an electrical machine while being treated by defendant physicians. The substance of the complaint is stated in the opinion. The separate answer of defendant Cannon denied that he had ever treated plaintiff for any ailment; denied any partnership with defendant Balcome as to plaintiff, and alleged that plaintiff was a patient of defendant Balcome. The separate answer of defendant Balcome alleged that plaintiff was his patient and was treated with a static electrical machine, a well known appliance in the medical profession; that defendant directed plaintiff to remove from her head all pins and combs whether of iron, steel or celluloid; that he discovered the remains of a steel hairpin at the point where the scalp was burned, and that if any injury accrued it was due to her failure to remove the hairpins. The replies were denials of the new matter alleged.

The case was tried before Orr, J., who at the close of the evidence directed the jury to return a verdict in favor of defendant Can-

[1]Reported in 126 N. W. 67.

[Note] Degree of care and skill which a physician or surgeon must exercise, see note to Whitesell v. Hill (Iowa) 37 L.R.A. 830.

non. The jury thereafter returned a verdict in favor of plaintiff for $1,200. Plaintiff's motion for judgment in her favor against defendant Cannon notwithstanding the verdict, or for a new trial, was denied. Defendant Balcome's motion for judgment in his favor notwithstanding the verdict was denied.

From the judgment entered pursuant to the verdict, defendant Balcome appealed. Affirmed.

From the order denying plaintiff's motion for judgment in her favor against defendant Cannon or for a new trial, she appealed. Affirmed.

*Richard & Coe,* for plaintiff.

*C. D. & R. D. O'Brien,* for defendants.

PER CURIAM.

Plaintiff and appellant charged the defendants and respondents, as partners engaged in the practice of medicine, with having negligently treated plaintiff with static electricity, to her injury. It was alleged: Plaintiff was placed on an insulated platform connected with the electrical machine. Above and in front of her head was put a conical cap, in a position subsequently described in detail. Static electricity was caused to be discharged from the machine, through the cap, in, upon, and through plaintiff. Defendant then left the room. No attendant was present. After the lapse of eight or ten minutes, plaintiff screamed. Defendant immediately entered the room, and discovered that her head was smoking. Through the negligence of defendant a large portion of the top and sides of plaintiff's head was seriously burned, whereby she was damaged in the sum of $5,000. Defendant admitted the fact of burning, but denied negligence. The case was tried to a jury, which returned a verdict of $1,200 for plaintiff. This appeal was taken from judgment entered against defendant Balcome.

Plaintiff made out a prima facie case of negligence. Plaintiff's only expert testified that, if the cap were brought close to the head and there was volume enough, there would be a continuous spark and harm would result. His testimony to the effect that the distance the cap was placed from plaintiff's head would determine whether a

burn was likely to occur, together with the testimony of plaintiff that it was not adjusted as on former occasions, and also the conduct of defendant in leaving the plaintiff in the room unattended, while the machine was working, for the space of ten minutes, during which time the burn occurred in connection with the other evidence in the case, was sufficient to take the question of defendant's negligence to the jury.

The trial court was justified in concluding that defendants were not partners, and that defendant Cannon was not liable for the negligence of defendant Balcome.

Order and judgment affirmed.

O'BRIEN, J., took no part.

JAGGARD, J. (dissenting).

I respectfully dissent. The evidence in my opinion rebuts the inference of negligence, to which it may be conceded the circumstances gave rise. It appears that this plaintiff had been subjected to the same treatment by the same machine on seven or eight previous occasions without harm. Defendant called a number of well-known experts of the highest character. The effect of their testimony is: The amperage or the quantity of electricity generated by the machine in question is infinitesimal. It figures at some one-millionth of an ampere, but the electromotive force is large. The effect resembles shooting a piece of eiderdown from a gun. There is great force, but the missile is so slight in character that it can do no harm. No case has ever been known of injury to a person by a static machine, nor is one known in the literature of the profession. The occurrence was "unique in experience," "a perfect mystery, contrary to all laws of physics." It could not be accounted for by any action of the static machine. A physician who had been using one in his practice daily since 1885, and had given perhaps one hundred thousand treatments, gave similar testimony. Another physician with seventeen years' experience in the use of the machine testified that he knew of nothing which could have produced this injury by this machine, and he knew of nothing which could have prevented

it. The testimony of the physicians was cogent evidence of its veracity and of their competency.

Certain experiments were performed by defendant after the accident. If it be conceded that this subsequent knowledge of science, as distinguished from the mere application of familiar forces to ordinary substances, was admissible in evidence—compare Staloch v. Holm, 100 Minn. 276, 111 N. W. 264, 9 L.R.A.(N.S.) 712, with Glockner v. Hardwood Mnfg. Co., 109 Minn. 30, 122 N. W. 465—the experiments were not significant in this case. The way in which the conical cap, described as an inverted crown or sunflower, was placed near plaintiff's head, the one suggested explanation of how the accident happened, is not shown to have been its cause. According to plaintiff, that cap was placed within two or three inches from her head, instead of six or eight inches away, as at other times. The decrease in distance tended to increase the strength of the current communicated to the patient's head; but it had never been known to produce the effect here complained of before the accident. It was shown by uncontradicted and unimpeached testimony that the force of the charge or amount of electricity used or turned on plaintiff in its usual operation would have been absolutely harmless, however the cap had been adjusted; that if the cap had been placed immediately on top of her head, it might have produced unpleasant sensations, but according to all known experience would not have injured the plaintiff. "Good practice requires that it should just clear the head; that is all." The patient could perceive the cone in front of her, so that, if there had been a spark, she would have seen it, but did not see it. It is to be noted that it was the back of her head which was burned. Moreover, it is the universal experience that there might have been a spark without possible harm. When an individual passes over a carpet, a spark is often generated, which would, for instance, light gas, without any possible harm to the individual.

The absence of any assistant in the room with plaintiff is not shown to have been a material factor. How such person, if present, could have prevented the harm, does not appear. If he had, for example, turned off the electricity which operated the machine, its wheels

would have revolved for some time from momentum. Nor has it been suggested how any interposition could have been effective to have stopped the passage of the current, which plaintiff said took more time than a second, but which must have been practically instantaneous. It appears that the presence of a physician or an assistant was not required by good medical practice, nor that there was any reasonable anticipation of harm which suggested it. Neither the facts in the record nor any conjecture reasonably founded thereon tends to show that the failure of the physician to give plaintiff any directions concerning the use of the machine, or to be present in person or by representative, was the proximate cause of the harm complained of.

The defendant had a right to rely on the presumption of the uniformity of the operation of natural forces. He was not bound to anticipate that a certain exceptional phenomenon, beyond the range of invariable and extensive experience, would happen. The courts have, indeed, denied responsibility for damage due to flood, tempests, or to lightning, which are known to happen frequently, and of which certain premonitory indications are common. See Baccelli v. North River, 133 App. Div. 449, 118 N. Y. Supp. 29. This accident was like a flash from a clear sky. Wind, it is known, can prove destructive; but could the proprietor of a place where an electric fan is used be reasonably held to anticipate that the breeze it generated would inflict injury? It is true defendant was dealing with a force which he knew in many manifestations is dangerous; but in this particular form in numberless instances it had proved innocuous. According to the record before us—and we are controlled by that—nothing within the range of a large and familiar experience suggested even the possibility of harm. Defendant, moreover, had purchased from reputable makers a standard machine, which at the time of the accident was in perfect order. It had previously been operated upon this plaintiff repeatedly and safely. He had a right to rely on its uniform and safe operation. Jenkens v. St. Paul City Ry. Co., 105 Minn. 504, 117 N. W. 928, 20 L.R.A.(N.S.) 401.

I am compelled to conclude that plaintiff suffered from the results of a physical force partially known and in some measure unknown,

whose particular potentiality for harm could not have reasonably been foreseen, and for which defendant was not responsible.