**P. J. Johnson, Plaintiff in Error, v. Hugh L. Marshall, Defendant in Error.**

### Gen. No. 7,553.

1. DIRECTION OF VERDICT AND DEMURRERS TO EVIDENCE—*insufficiency of declaration as basis for direction of verdict for defendant.* Where a defendant has failed to demur to a declaration, and has filed a plea of the general issue, the direction of a verdict for the defendant cannot be sustained upon the theory that the defendant's motion to exclude the evidence and for a peremptory instruction challenged the sufficiency of the declaration.

2. PHYSICIANS AND SURGEONS—*sufficiency of evidence to take to jury issue as to negligence in failing adequately to protect parts of patient's face not under treatment from X-ray burns.* Evidence in an action for injury by X-ray burns held to raise an issue for the jury as to the negligence of the defendant in failing adequately to protect from exposure to the X-ray those parts of the patient's face not intended to be treated thereby.

3. PHYSICIANS AND SURGEONS—*sufficiency of evidence to take to jury issue as to negligence in leaving room while patient exposed*

*to X-ray.* In an action for injury by X-ray burns evidence held to raise an issue for the jury as to the negligence of the defendant in leaving the room while the patient was exposed to the X-ray machine.

4. PHYSICIANS AND SURGEONS—*evidence admissible in action for injury by X-ray burns as warranting inference of admission of liability.* In an action for injury by X-ray burns evidence that about a month after the giving of the alleged negligent treatment the defendant said: "Pete (referring to plaintiff), you know I will make it right. We have known each other all our life and been friends and you know I will make it right, but wait. * * * Well, Pete, you got a bad one, didn't you?" held to warrant an inference that defendant recognized that he was responsible for the injury complained of by plaintiff, and hence to be proper testimony to be considered by the jury on the issue of the defendant's negligence.

5. PHYSICIANS AND SURGEONS—*sufficiency of evidence to take issue of defendant's negligence to jury under res ipsa loquitur doctrine.* Evidence in an action for injury by X-ray burns held sufficient to take the question of the defendant's negligence to the jury under the doctrine *res ipsa loquitur.*

Error by plaintiff to the Circuit Court of Henderson County; the Hon. WALTER C. FRANK, Judge, presiding. Heard in this court at the October term, 1925. Reversed and remanded. Opinion filed May 29, 1926.

O'HARRA, O'HARRA & O'HARRA, for plaintiff in error.

GRIER, SAFFORD & SOULE, for defendant in error.

MR. JUSTICE JETT delivered the opinion of the court. This is an action for damages brought by P. J. Johnson, plaintiff in error, against Hugh L. Marshall, defendant in error, for injuries sustained by the plaintiff in error occasioned by an X-ray machine operated by the said Marshall, defendant in error.

A jury trial was had and at the close of all of the evidence offered on the part of the plaintiff the court directed a verdict for the defendant. A motion for a new trial was made and by the court denied, and judgment rendered on the verdict, from which action of the court the plaintiff prosecutes this writ of error.

In this opinion the plaintiff in error will be called plaintiff, and the defendant in error, defendant.

The declaration consists of six counts. The first charges that the defendant is a practicing physician and has an office and place of business in the village of Stronghurst, Henderson county, Illinois, and practices his profession in and about said village; that on and for a long time prior to June 21, 1924, defendant had as a part of his office equipment an "X-ray machine" known as a "Kelly-Koett" machine; that on, to wit, June 21, 1924, and for many months prior thereto, defendant held himself out to the public as a physician able, capable and competent to give X-ray treatments with said machine to his patients and to others to whom he recommended this character of treatment; that it then and there became and was the duty of the defendant to have and keep the said X-ray machine in good condition and repair and in using the same to exercise due care and caution and not unnecessarily burn or injure the person or body of an individual receiving such X-ray treatment; that plaintiff then and there was a man of about 65 years of age, in good health, but troubled with a growth or obstruction in his nose and on, to wit, June 21, 1924, he called on defendant at his said office and employed the defendant as a physician to examine his nose and advise him with reference thereto and to treat and remove the said trouble; that the defendant then and there for reward as such physician examined the plaintiff's nose and told him that he was troubled with polypi in his nose and that he, the defendant, could remove the same and cure him of said trouble by the use of said X-ray machine, and advised the plaintiff to submit to such treatment and told plaintiff there was no danger in such treatment and that it would do him no harm. Thereupon relying on the fact that the defendant was a practicing physician of long standing and that he was accustomed to giving treatments

with said X-ray machine, and upon defendant's statements and representations aforesaid, plaintiff did then and there follow defendant's advice and put himself under the care and treatment of defendant and submitted to said X-ray treatment by defendant and that defendant then and there placed the plaintiff's nose in conjunction with the said X-ray machine and subjected it to the rays therefrom; that defendant then and there wholly regardless of his duty and obligations in that behalf so negligently, carelessly and improperly administered such X-ray treatment with said machine to plaintiff's nose that plaintiff's face, eyes and eyelashes were unnecessarily and seriously burned and the tear ducts of his eyes were burned out, by means whereof plaintiff suffered great and excruciating pain and anguish and suffering, to wit, from thence hitherto and was and is permanently injured by and on account thereof and because of such injuries suffered as aforesaid plaintiff was compelled to and did pay out and expend divers and large sums of money, to wit, $300 in and for trying to be cured of such burns and injuries.

The second count of the declaration is similar to the first and alleges that defendant then and there so unskilfully and negligently conducted himself that through his want of skill and care the plaintiff's face was unnecessarily burned.

In the third count there is no allegation of negligence. This count alleges that the X-ray machine was operated by means of electricity and a powerful electric current and it was wholly under the control of the defendant. This count is based upon the doctrine of *res ipsa loquitur,* which plaintiff contends applies to the use of an X-ray machine under the facts as disclosed in this case.

The fourth count among other things alleges negligence in that there was no proper protection to that part of the plaintiff's face not treated.

The fifth charges negligence in that defendant left the room with the X-ray turned on plaintiff's face and permitted it to remain too long.

The sixth charges negligence in that the machine was not in proper condition.

The only evidence in the record is that offered on the part of the plaintiff.

The plaintiff lives on a farm about six miles from Stronghurst, in Henderson county. He is a man of the age of about 65 years. On June 21, 1924, he was suffering from a growth in the left nostril and on that date he went to the office of the defendant and requested him to examine his nose. The doctor made an examination and told him that it was polypi and that he could remove it with a knife or with the X-ray. Plaintiff told the defendant that he did not want to do anything that day for the reason that he desired to consult his family. The doctor asked, "What is the matter, are you afraid of getting hurt? It won't hurt you a bit to remove it with the X-ray." The plaintiff then determined to have it removed by means of the X-ray and he went into an adjoining room where the X-ray machine was located and at the suggestion of the defendant he lay down on the table on his right side so that an application could be made to the left nostril. The doctor put some lead foil or lead paper of a dark grey color over his nose. His eyes were not covered sufficiently and in support of his contention, plaintiff says that when he opened his eyes he could see. The X-ray was then turned on and after a while the plaintiff was requested to turn over on his left side so that the X-ray could be applied to the right side of his nose. After the plaintiff turned over in order to have the treatment applied to the right side of his nose he inquired of the doctor how much longer would be required and he was informed that it would be about 10 minutes. Plaintiff says that when he made this inquiry of the defendant, the de-

fendant was in another room while the machine was turned on. After having received the treatment the plaintiff returned to his home, and in the evening of that day his face began to swell and his eyes to get red and to run. On Saturday the plaintiff returned to the office of the defendant and was told to return on Thursday. When the plaintiff went back on the following Thursday the doctor was absent and the plaintiff did not see him until the next Saturday following which was two weeks after the treatment. At this time his cheeks had swollen and were beginning to crack open and his eyes were beginning to swell. The defendant looked at his face but gave him no further treatment. The record discloses that the defendant, after this visit of the plaintiff, was away from home for some time on a vacation. The plaintiff then consulted Dr. Huston of Burlington for treatment. Plaintiff did not see the defendant again until about the twenty-first of July at which time he told the defendant that he expected him to make it right and the doctor said: "Pete, you know I will make it right. We have known each other all of our life and been friends and you know I will make it right, but wait. Well, Pete, you got a bad one, didn't you?"

In the latter part of July following the treatment in June, the plaintiff's eyes and eyelids were inflamed and swollen to such an extent that he could not open them, and water or tears were running down his cheeks; his face and nose were covered with scabs. Before the application of the X-ray the plaintiff could read without difficulty, but since that time his eyes have been weak and blurry and pain him; and his health has been greatly impaired since the treatment.

Dr. Huston, of Burlington, eye, ear, nose and throat specialist, testified he had had experience with polypi in the nose; that he became acquainted with the plaintiff on July 10, 1924; that on that date he examined his nose and eyes and face; that his nose, cheeks and

lower parts of the forehead and eyelids were red and inflamed and swollen; that an examination of the plaintiff's nose disclosed that the nasal passages were obstructed with large polypi; his eyelashes and eyebrows were absent and his cheeks and nose and lower part of his forehead had large cracks from which a water exudate was oozing. His tear ducts were obstructed.

Dr. Irvin testified he had been in the practice of medicine and surgery 26 years; that he had had an X-ray machine for a number of years; that during the course of his practice he had had occasion to observe persons who had been burned by an X-ray; that he met the plaintiff an August 24. His face, cheeks, nose and eyes were red and swollen; the scabs were scaling off a little over his cheek bones and nose; that he had treated persons who had been burned with an X-ray, "The condition in which I saw the plaintiff in August looked like some X-ray burns I have seen. When treating the face with an X-ray machine the face has to be protected outside of the diseased part with a piece of lead. An X-ray machine is operated by electricity and run by a motor. In my operation in the handling of an X-ray machine the eyes of a person are properly protected by a lead foil. In my opinion if the part of the face which you do not want burned and will not treat is properly covered by a lead foil of proper thickness the X-ray will not penetrate it, burn the eyes, or burn that portion so covered. In my opinion from the experience that I have had in the operation of my own X-ray machine, and from what I have observed from the operation of X-ray machines, and from what I have read concerning the operation of them, it would not be proper treatment of a patient by X-ray for the operator to leave the room with the X-ray machine turned on the face of the patient."

In view of what is disclosed by the record, did the court err in directing a verdict? It is the contention of the defendant that there is no proof of any negligence

or unskillfulness whatever to sustain the action under any count of the declaration. It is insisted that as some of the counts of the declaration fail to allege that the plaintiff was in the exercise of due care and caution, that the court under those counts was within the rule in directing a verdict.

It will be remembered that the plea of the general issue was filed and no demurrer was interposed to the declaration. To the suggestion that the declaration was fatally defective, and the motion to exclude the evidence and give the peremptory instruction was not erroneous it is sufficient to say that the defendant, by pleading to the merits, admitted the sufficiency of the declaration, and it is not readily perceived how its sufficiency could be substantially raised by a mere motion to exclude the evidence from the jury. We are aware of no practice authorizing such a course. If the defendant desired to question the sufficiency of the declaration he should have demurred. *Swift & Co. v. Rutkowski,* 182 Ill. 18-23.

It is further insisted by the defendant that this is a malpractice case and when the defendant as a physician has given a patient the benefit of his best judgment he is not liable for negligence even if his judgment is erroneous, unless the error is so gross as to be inconsistent with reasonable and ordinary skill and care; that no presumption of absence of proper skill and attention arises from the mere fact that a patient did not recover, or that a cure was not effected; that the fact that a good result is not obtained is in itself no evidence of negligence or lack of care, but there must be affirmative proof of such negligence or lack of care, and that the injury complained of resulted therefrom. That the plaintiff was injured is not controverted. If the defendant in the operation of the X-ray machine in administering the treatment that occasioned the condition to the face, eyes and nose of plaintiff failed to protect that part of the face not

treated, was the defendant guilty of negligence? The evidence shows that if the portion of the face not being treated is covered properly with lead foil it is a protection; that before applying the X-ray for treatment proper practice requires that that part of the face not being treated be covered sufficiently with lead foil or other substance as a protection. It was a question of fact for the jury to determine whether or not the necessary precautions had been taken and whether or not the defendant was guilty of the negligence charged in that respect.

It is charged in one count of the declaration that the defendant, after the X-ray had been turned on the plaintiff, left the room. The testimony discloses, as stated by Dr. Irvin, that in his opinion from the experience he had had in the application of his own X-ray machine and from what he had observed from the application of other machines, together with what he had read of X-ray machines, it would not be proper practice or treatment of a patient by X-ray for the operator to leave the room with the X-ray turned on the face of the patient. There is evidence in this record that tends to prove this count of the declaration.

It is the contention of the plaintiff that about a month after the treatment the defendant said: "Pete," referring to the plaintiff, "you know I will make it right. We have known each other all of our life and been friends and you know I will make it right, but wait. * * * Well, Pete, you got a bad one, didn't you?" It is a fair inference from this language that the defendant recognized the fact that he was responsible for the injury complained of by the plaintiff. It was certainly proper testimony to go to the jury bearing on the question of the alleged negligence of the defendant.

Admissions of liability by a defendant constitute sufficient proof of negligence to entitle a plaintiff to

go to the jury.  *Reed v. Kabureck,* 229 Ill. App. 36, 40, 41.

Furthermore the plaintiff contends that the first, second and third counts of the declaration were framed upon the theory that the doctrine of *res ipsa loquitur* applies and that the facts bring the case within that rule.  The defendant takes the position that it cannot apply in a malpractice case.  By the state of the pleadings it is admitted that the defendant was possessed of the X-ray machine in question, and was operating it by means of electricity with a powerful electric current, and that the defendant placed the plaintiff in conjunction with said machine for the purpose of administering a treatment on the occasion mentioned in the declaration.  *Holcomb v. Magee,* 217 Ill. App. 272-279.

The X-ray was under the exclusive control of the defendant, and there is evidence that the injury to the plaintiff is not a necessary result of a treatment by an X-ray machine.  While the evidence is not as conclusive as it might be, yet we are of the opinion that the testimony is to the effect that the result that followed the use of the X-ray is not a necessary nor the known and usual result which follows an application of the character made by the use thereof upon the plaintiff.  More precisely the doctrine *res ipsa loquitur* asserts that whenever a thing which produced an injury is shown to have been under the control and management of the defendant, and the occurrence is such as in the ordinary course of events does not happen if due care has been exercised, the fact of injury itself will be deemed to afford sufficient evidence to support a recovery in the absence of any explanation by the defendant tending to show that the injury was not due to his want of care.  20 R. C. L. 187, sec. 156. The meaning of this maxim is that while negligence is not, as a general rule, to be presumed, yet the injury itself may afford sufficient prima facie evidence

of negligence, and the presumption of negligence may be created by the circumstances under which the injury occurred. Where negligence is thus presumed from the occurrence of the injury, the defendant is called upon to rebut the prima facie case by showing that he took reasonable care to prevent the happening of such an injury. *Hart v. Washington Park Club,* 157 Ill. 9, 14, 15.

*Holcomb v. Magee,* 217 Ill. App. 272, was an action on the case for malpractice. It was urged by the plaintiff that the doctrine of *res ipsa loquitur* applied and could be invoked in the case. At page 283 the court said:

"The parties disagree upon the question whether this case comes within the doctrine of *res ipsa loquitur,* so that the burning is itself evidence of negligence. There are authorities to that effect in cases of burning by X-rays. In *Shockley v. Tucker,* 127 Iowa 456, 103 N. W. 360, the court said: 'We think the fact that plaintiff was severely burned is some evidence in itself that the treatment was improper, and it cannot be said that the verdict lacks support in this respect in the evidence.' In *Jones v. Tri-State Tel. & Tel. Co.,* 118 Minn. 217, 4 N. C. C. A. 832, 136 N. W. 741, the court said:

" 'The instrumentality was under the exclusive control of defendant, and there is sufficient evidence that injury to the subject is not a necessary result of the taking of an X-ray picture, if proper instrumentalities and proper care are used. Certainly we cannot say that plaintiff's injuries were not the result of the exposure. These facts are enough to make the case one of *res ipsa loquitur,* and to make the burden on defendant to show that there was no negligence. Defendant did not show this, at least conclusively. Indeed, there was sufficient evidence of negligence, even without the *res ipsa* rule, to make a case for the jury.' In *George*

*v. Shannon,* 92 Kan. 801, 6 N. C. C. A. 1086, 142 Pac. 967, the court said, speaking of a given instruction:

" 'Reduced to a sentence, it is this: If the taking of such pictures in a proper and careful manner does not necessarily result in injury, then the fact that injury did result is some evidence (which may be rebutted) that proper care and skill were not exercised. We find no error in the instruction.' "

When the fact that plaintiff was burned severely is taken in connection with the assurance given by the defendant to the plaintiff that it would not hurt him and with the testimony of Dr. Irvin which tends to prove that the X-ray machine with ordinary skill will not burn a patient, at a point other than intended, we think the testimony fairly tends to show that plaintiff was burned because of a lack of ordinary care in the operation of the machine. The showing made, notwithstanding the rule contended for by the defendant in malpractice cases, is sufficient in our opinion to authorize the submission of the question of fact to the jury for them to determine whether or not the defendant was guilty of the negligence alleged in the declaration or some count thereof. We are of the opinion that the maxim *res ipsa loquitur* can be invoked.

We, therefore, conclude that the court erred in directing a verdict for the defendant and the judgment of the circuit court of Henderson county is reversed and the cause remanded.

*Reversed and remanded.*