Elna Adamsen, Appellee, v. August L. Magnelia, Appellant.

Gen. No. 8,898.

420

Heard in this court at the October term, 1934. Opinion filed May 1, 1935. Rehearing denied June 26, 1935.

NORTH, GIBBONEY & NORTH, of Rockford, for appellant.

SMITH & MENZIMER, of Rockford, for appellee; LISLE W. MENZIMER, of counsel.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

This is an appeal from an order of the circuit court of Winnebago county granting the plaintiff's motion for a new trial. At the close of the plaintiff's evidence, the defendant made a motion for a directed verdict which was granted. Under the instruction of the court, the jury returned a verdict finding the defendant not guilty. The court did not render a judgment on the verdict and the plaintiff filed a written motion specifying twelve grounds for new trial. The record does not disclose the reasons the trial judge gave for granting a new trial. It has been suggested by the Appellate Court that trial judges state for the record their reasons for granting a new trial. *Gavin v. Keter,* 278 Ill. App. 308.

This action is based on a complaint which charges the defendant, a practicing physician, with the negli-

gent treatment of the plaintiff in the application and use of an electric apparatus, known among physicians as a Fisher Electro-Therapeutic machine. The plaintiff had a swelling or bruise on her cheek just below the left eye. The defendant, while treating her, applied a small metal plate to the swelling. The other point of contact, also a small metal plate, was placed on the right cheek of the plaintiff. The plates are attached by wires to the machine which is operated by an electric current. After the plates were removed from her face it was discovered that the plaintiff had sustained a burn on her right cheek where the defendant had placed one of the plates.

Examining the brief of the plaintiff, who is the appellee here, it appears that the reasons given for asking for a new trial are: That the trial court erred by excluding evidence offered by the plaintiff which she contends was admissible and material and of such a nature as to overcome any objection raised by a motion for a directed verdict; that the plaintiff had not produced any evidence tending to prove the essential allegations of her complaint; that the treatment of a patient by a physician may be so grossly negligent that the jury may say it was negligent *per se* without the testimony of expert witnesses, and that the rule of *res ipsa loquitur* applies to the facts shown in evidence.

There is, however, the appellee's contention, of a broader scope, namely, that the trial court is vested with a broad discretion in granting a motion for a new trial, and upon appeal from an order granting it, a court of review will not reverse the order except in case of a clear abuse of discretion by the trial court. This contention should be considered first by this court.

In a jury trial the motion of the defendant at the close of the plaintiff's evidence for a directed verdict raises a question of law respecting the legal sufficiency

of the evidence to sustain a verdict against the defendant. If the motion is sustained, and the appellate tribunal, on review, holds that, as a matter of law, the trial court erred in granting the motion, the judgment of the trial court will be reversed and the cause remanded for a new trial. (*John Deere Plow Co. v. Carmer,* 350 Ill. 104.) Whether the evidence, with all legitimate and natural inferences to be drawn therefrom, necessarily leads to a certain conclusion, is a question of law. *Ferrero v. National Council of Knights & Ladies of Security,* 309 Ill. 476.

In general, the application for a new trial is addressed to the judicial discretion of the trial court. *Appel v. Chicago City Ry. Co.,* 259 Ill. 561. Notwithstanding the provision of the recently enacted Civil Practice Act authorizing an appeal from an order granting a new trial, the trial courts are, generally speaking, clothed with a discretion, as at common law, to be exercised in such manner as will best answer the ends of justice when granting motions for a new trial. *Hewitt v. Jones,* 72 Ill. 218. The discretion exercised by a trial court where it grants a new trial is now subject to review. Section 77 of Civil Practice Act, Cahill's St. ch. 110, ¶ 205; *Yarber v. Chicago & Alton Ry. Co.,* 235 Ill. 589. In cases on appeal where it was contended that the trial court erred in granting a motion for a new trial, the Appellate Court has held that where such motion is based on questions of fact arising at the trial, or on matters which occur in the presence of the court during the trial, a court of review will not interfere with the order granting the new trial unless the record shows a clear abuse of discretion of the trial court in granting the motion. *Barthelman v. Braun,* 278 Ill. App. 384; *Village of La Grange v. Clark,* 278 Ill. App. 269; *Gavin v. Keter,* 278 Ill. App. 308. This position is sustained by the authorities. *Smith v. Shultz,* 1 Scam. (Ill.) 490; *Yarber v. Chicago & Alton Ry. Co.,* 235 Ill. 589.

Before the enactment of the Act of June 21, 1873, which authorized exception to be taken to an order overruling a motion for a new trial and the assignment of error on an order so excepted to, the Supreme Court held that the granting or refusing a motion for a new trial was a question to be determined in the sound discretion of the court to which the application for a new trial was addressed and a refusal to be no ground for error. *Yarber v. Chicago & Alton Ry. Co., supra.* Until the passage of the Civil Practice Act, an order of a trial court granting a motion for a new trial was not reviewable in an appellate court because the granting of the motion was within the discretion of the trial court. However, before the passage of the Act of June 21, 1873, a writ of error would lie to the Supreme Court on the question of law if the trial court erred allowing a motion for a directed verdict. *Mellick v. De Seelhorst,* Beecher's Breese, 221. Our Supreme Court has held that as section 77 of the former Practice Act was not mandatory, it was not necessary that a motion for a new trial should be made to save for review the legal question whether the court erred in passing on a motion for a directed verdict; that the question if the evidence is sufficient to support a verdict, after a jury trial, is one of fact. *Yarber v. Chicago & Alton Ry. Co., supra; Shannon v. Nightingale,* 321 Ill. 168. If the legal question—that there is no evidence tending to support the issues of the case—is decided against the plaintiff, the court must grant a new trial. *Shannon v. Nightingale, supra.* In other words, if the motion for a directed verdict is overruled and the case is submitted to a jury on the merits, on a motion for a new trial the trial court passes on the question of law as to whether there is any evidence tending to prove the essential allegations of the plaintiff's complaint, and, also, the question of fact, whether it is sufficient to support such allegations, or the verdict. The question of fact is addressed to the

discretion of the trial court and the trial court must weigh the evidence and consider the credibility of the witnesses. *Shannon v. Nightingale, supra.* As before stated, the discretion of the trial court in passing on a question of fact arising under a motion for a new trial on appeal to this court will not be lightly disturbed. On this latter point, attention is called to the cases of *Belden v. Innis,* 84 Ill. 78, and *Reeve v. Dennett,* 137 Mass. 315.

From the foregoing it is clear that when the trial court directs a verdict it takes the case from the jury, and the verdict returned by the jury, is in fact, a decision of the court on a question of law, although the verdict is nominally the action taken by the jury. 64 C. J. 421.

Strictly speaking the purpose of a motion for a new trial is to secure a re-examination in the same court of an issue of fact after a verdict, or a decision by the court. 14 Ency. of Pl. & Pr. 715; 46 C. J. 58. A new trial must be granted if the court erred in directing a verdict. Specifying in a motion for a new trial, made to a trial court, that it erred on the question of law for a directed verdict as a ground for a new trial, has been sanctioned by usage and practice in the courts of this State. The question whether there is any evidence in the record tending to prove the issue and the questions of the alleged error of law of the exclusion of competent and material evidence tending to prove the issue, arising at the close of the plaintiff's evidence, are closely allied. It seems logical and consistent, and also a practical procedure, to raise both questions for the consideration of the trial court by a motion for a new trial. Attention by the trial court to section 68 of the Civil Practice Act, Cahill's St. ch. 110, ¶ 196, would shorten litigation and avoid two appeals in the same cause of action. *Nawrocki v. Chicago City Ry. Co.,* 248 Ill. 101.

The question of law as to whether there is any evidence in the record tending to prove the issue, is not addressed to the discretion of the court. *Knoxville Traction Co. v. Brown,* 115 Tenn. 323, 89 S. W. 319; *Odalovich v. Weir,* 132 Wash. 57, 231 Pac. 170. We are not aware that in passing on the question whether a trial court erred in acting on a motion for a directed verdict, that courts of review of this State have examined the question in the light of discretionary power exercised by the trial court. The evidence of the plaintiff, on a motion for a directed verdict, must be accepted as true and the trial court, under such a motion, does not weigh the evidence. Whether the court correctly applied the law to the facts is a question of law. *Nawrocki v. Chicago City Ry. Co., supra.* A jury trial is a matter of right. It cannot be said that when a trial judge has erred on a question of law that he has abused his discretion. *Griffin v. State,* 12 Ga. App. 615, 77 S. E. 1080; *Mehan v. Chicago, R. I. & P. R. Co.,* 55 Iowa 305, 7 N. W. 613.

As before stated, it is the contention of the plaintiff that the trial court properly granted a new trial, because the court erred in sustaining the motion for a directed verdict, on the ground that the court erroneously excluded evidence offered by the plaintiff tending to prove specific acts of negligence of the defendant; also, that the plaintiff's evidence made out a prima facie case under the doctrine of *res ipsa loquitur.* These contentions are apparently inconsistent for the reason that if the evidence explains or shows the cause of the occurrence complained of, there is no room for a presumption under the doctrine of *res ipsa loquitur. O'Rourke v. Marshall Field & Co.,* 307 Ill. 197. If a plaintiff relies on the doctrine of *res ipsa loquitur,* his complaint should be so drawn as to permit the application of that doctrine. *Feldman v. Chicago Rys. Co.,* 289 Ill. 25.

In this case the court must determine if there is evidence in the record tending to prove acts of specific negligence of the defendant as charged in the complaint and if there is such evidence, whether there was a causal relation between the negligence proved and the injury complained of. The same is true if competent evidence was improperly excluded by the trial court which would tend to prove specific acts of negligence. There must be direct proof, or evidence from which the inference could be naturally drawn, that such negligent acts were the proximate cause of the injury. If the evidence in the record by itself, or if aided by improperly excluded evidence, tends to prove any specific acts of negligence charged in the complaint and that there was a causal relation between such negligence and the injury complained of, the necessity of raising a presumption as to the cause of the accident under the doctrine of *res ipsa loquitur* does not exist.

There are seven counts in the complaint all of which allege as follows: That the defendant is a practicing physician and surgeon in the City of Rockford; that as such physician he treats persons with ailments with a therapeutic machine operated by electricity; that plaintiff on August 19, 1933, was suffering from a bruise and hard swelling on her face just below the left eye, and that she employed the defendant as such physician to examine said bruise and advise her with reference thereto; that the defendant accepted such employment and examined the swelling on plaintiff's face and told her he could successfully treat the same by the use of said machine, and that such treatment was the only treatment that would help said injury.

The first, second, and third counts allege that the plaintiff had no knowledge with reference to said machine or its use; that she relied wholly on the statements of the defendant and that she accepted defendant's advice and submitted to the treatment.

The first count charges that the defendant placed a portion of said machine in contact with said swelling, and another portion of said machine in contact with the right cheek of the plaintiff, and, while the plaintiff was exercising due care and caution for her own safety, the defendant turned on the electric current without protecting in a proper manner the right side of the plaintiff's face, and, by reason thereof, the right side of the plaintiff's face, was, from the contact with said machine, burned over a large surface.

The second count, after alleging that the defendant applied said machine to plaintiff's face as recited in the first count, charges that he turned on the electric current, and thereafter negligently and carelessly left the room and permitted the said machine to remain too long on the plaintiff's face, and so negligently, carelessly and improperly administered the said treatment that the right side of the plaintiff's face was unnecessarily burned, etc.

The third count charges that it was the duty of the defendant, in treating the plaintiff properly, to remain in attendance while the machine was applied to the face of the plaintiff, and to fit the said machine tightly to the face of the plaintiff, and to exercise due and ordinary care to prevent injury to the plaintiff by the application of said machine to the face of the plaintiff, but that nevertheless, the defendant disregarding his aforesaid duties applied said machine in a loose and careless manner to the face of the plaintiff, and, after turning on the electric current, left the room, and permitted the plaintiff to remain therein with no one in attendance for a long period of time, to wit, 30 minutes, etc.

The fourth count charges: ''That the plaintiff thereupon submitted to such treatment by the defendant, being then and there in the exercise of due care for her own safety and well being, but the defendant then

and there so unskillfully and negligently conducted himself in that behalf that through his want of skill and care the right side of the plaintiff's face was deeply burned over a large part thereof.''

The fifth count charges that the machine was not in proper condition for use on the plaintiff's face, but on the contrary, and unknown to the plaintiff, said machine was not working properly, and, on account thereof, when the electric current was turned on, she was burned, etc.

The sixth count charges that it was the duty of the defendant to examine said machine to see that it was working properly before applying it to the face of the plaintiff, and to apply the same to the face of the plaintiff in such a way that it could not become loose and slip down or move down from the surface to which it was applied, yet the defendant disregarded his aforesaid duties and applied the machine to the face of the plaintiff when the machine was not working properly, and in such a negligent manner that it became loose and slipped away from the surface to which it was applied, without the knowledge or act of the plaintiff, by reason thereof, etc.

The seventh count charges that it was the duty of the defendant to remain in attendance while the machine was applied to the face of the plaintiff, but that the defendant disregarding his duty in that behalf left the room and permitted the plaintiff to remain therein with no one in attendance for, to wit, 30 minutes when a nurse employed by the defendant came into the room and removed said machine; that the defendant had left his office and remained away therefrom for, to wit, one hour; that by reason of said defendant leaving the plaintiff unattended in his office, the plaintiff was injured, etc.

· The answer of the defendant admits that he is a licensed physician and surgeon and that he was em-

ployed as such by the plaintiff to treat a bruise or swelling on her face. He denies that he told the plaintiff that he could successfully treat said bruise by the use of an electric therapeutic machine, and that it was the only treatment that would help the injury. He also denies that the plaintiff was in the exercise of due care for her own safety and avers that the plaintiff was to report to the defendant if she felt any excess heat or burning sensation and that the plaintiff failed to report any such feeling at any time during the said treatment. He further says that the treatment administered to the plaintiff by the defendant was a proper, safe and accepted method of treating said injury.

The defendant was called as a witness by the plaintiff. He testified that he treated the plaintiff by the use of a Fisher Electro-Therapeutic machine; that it is operated by a high frequency electric current; that it is necessary to have two points contact in order to apply the current. The plaintiff testified that the defendant applied the machine to her face by placing a metal plate in contact with the bruise and another plate in contact with her right cheek; that the plates were held in place by a gauze bandage around her head; that the defendant turned on the electric current; that she called the defendant's attention to a prickling sensation on her right cheek and the defendant told her, "that is good for you"; that the right plate became loose and the plaintiff so informed the defendant; that the defendant pushed the plate back under the gauze and said, "I think it will stay there"; that defendant was afterwards again informed by the plaintiff of the prickling sensation; that the defendant left the room and building and plaintiff was wholly unattended by anyone for a period of about 25 or 30 minutes when a nurse who is employed by the defendant came into his office; that the nurse was dressed

in street clothes; that she put on a nurse's uniform; that she then removed the plates from the face of the plaintiff and it was discovered that her right cheek was severely burned and the left cheek of the plaintiff was unchanged; that there was nothing wrong with the right cheek of the plaintiff before she went to the office of the defendant and it had no marks on it; that plaintiff felt no burning sensation during the treatment; that after the nurse removed the plates she called the defendant on the telephone and it was about 30 minutes later that the defendant arrived at his office. He conversed with the nurse about the matter and advised the plaintiff to return to his office on the next day. The plaintiff also testified as to the nature and extent of the burn.

Dr. Wright, whose qualifications as an expert were admitted by the defendant, testified, in answer to a hypothetical question embodying facts that the plaintiff felt a prickling sensation on her right cheek after the plate slipped and had been replaced, "that a Fisher electro-therapeutic machine could cause such an injury as sustained by the plaintiff if sufficient electric current were used and the plates remained in contact with the body of the plaintiff for twenty-five to thirty minutes; that it was possible to control the amount of electricity that goes through the machine and through the patient being treated therewith."

The following testimony was admitted, but on motion of the defendant that it was not part of the *res gestae,* it was stricken from the record. Charlotte Christenson, mother of the plaintiff, testified that on August 28, 1933, she had a conversation with the defendant as follows: "I said to Dr. Magnelia that I couldn't see how that could happen if the machine was put on tight, it must have been loose, otherwise it would not have happened and it all happened through carelessness." Dr. Magnelia said, "I know

it and I can't tell you how bad I feel about it." A voluntary admission by a party to a suit against his interest is admissible, even though made to a person who is not a party to the suit. *Freet v. American Elec. Supply Co.*, 257 Ill. 248; *Johnson v. Marshall*, 241 Ill. App. 80. Before Mrs. Christenson testified, the plaintiff had stated that the plate slipped and was put back in place by the defendant. This evidence of the plaintiff must be accepted as true on a motion for a directed verdict. The evidence of the plaintiff was proof that the plate was "loose." The excluded statement by the defendant that the plate was loose was cumulative and it would not have added any probative evidence, if admitted, under the motion for a directed verdict. As we understand counsel for the plaintiff, they contend the excluded admission also tends to prove that the slipping of the plate was the cause of the accident, and as the defendant is a physician and an expert, his statement that his carelessness in failing to securely fasten the plate to the face of the plaintiff was the cause of the accident. There is no evidence in the record that the defendant is an expert on the question of the use and application of an electric therapeutic machine. An expert is not permitted to testify that a certain cause, in a given case, produced the injury complained of. *Fitzgerald v. Chicago*, 144 Ill. App. 462; *Chicago Union Traction Co. v. Roberts*, 229 Ill. 481.

It is a reasonable inference from the evidence that sufficient electric current was passed into said machine by the defendant to burn the plaintiff as charged and that the plaintiff in fact was so burned by the electric current. The amount of electric current passing into and through said machine could be controlled by the defendant.

We are of the opinion that there is direct and circumstantial evidence in the record tending to prove that the defendant was negligent in leaving the plain-

tiff without proper attendance and supervision during the administration of the said treatment, especially after the plate on the right cheek of the plaintiff had slipped and the plaintiff had informed the defendant that she felt a prickling sensation while the said plate was being readjusted by the defendant. The evidence tends to prove, from reasonable inference therefrom, that there was a causal connection between the said negligence and the burn suffered by the plaintiff. *Frisk v. Cannon*, 110 Minn. 438, 126 N. W. 67; *Reeves v. Lutz*, 179 Mo. App. 61, 162 S. W. 280; *Longfellow v. Vernon*, 57 Ind. App. 611, 105 N. E. 178; *McLaughlin v. Alton R. R.*, 278 Ill. App. 551. The facts of the case are of such a character as to enable a jury to find negligence in the treatment of the plaintiff without the aid of expert testimony other than was given at the trial. *Vergeldt v. Hartzell*, 1 F. (2d) 633; *Evans v. Roberts*, 172 Iowa 653, 154 N. W. 923; *Benson v. Dean*, 232 N. Y. 52, 133 N. E. 125; *Francis v. Brooks*, 24 Ohio App. 136, 156 N. E. 609; *James v. Robertson*, 39 Utah 414, 117 Pac. 1068; *Cornwell v. Sleicher*, 119 Wash. 573, 205 Pac. 1059.

While the cases on the question whether the doctrine of *res ipsa loquitur* applies to a malpractice case against a physician using and controlling an electric machine while treating a patient are in an unhappy discord (*Lewis v. Casenburg*, 157 Tenn. 187, 7 S. W. (2d) 808, 60 A. L. R. 254) this court is committed to the rule that the doctrine is applicable to malpractice cases under the evidence in this case. *Johnson v. Marshall*, 241 Ill. App. 80; *Holcomb v. Magee*, 217 Ill. App. 272; *Higgins v. Byrnes*, 274 Ill. App. 440.

We are of the opinion that the trial court did not err in granting the motion for a new trial, and its order so doing is hereby affirmed.

*Affirmed.*