## G. F. Wettaw, Appellee, v. Retail Hardware Mutual Fire Insurance Company et al., Appellants.

Opinion filed November 19, 1936.

SILBER, CLAUSEN, HIRSH & WOLEY, of Chicago, for appellants.

HARRY J. FLANDERS and K. C. RONALD, both of Eldorado, for appellee.

MR. PRESIDING JUSTICE STONE delivered the opinion of the court.

The appellants, defendants, Retail Hardware Mutual Fire Insurance Company, a corporation, Hard-

ware Dealers Mutual Fire Insurance Company, a corporation, and Minnesota Implement Mutual Fire Insurance Company, a corporation, appeal from an order of the circuit court of Saline county granting a new trial and setting aside a verdict rendered in favor of the defendants in a suit brought by G. F. Wettaw, plaintiff, and appellee, upon insurance policies for damage to property alleged to have resulted from a windstorm, tornado, or cyclone.

The appeal was allowed under section 77 of the Civil Practice Act, Ill. State Bar Stats. 1935, ch. 110, ¶ 205, and Rule 30 of the Rules of Practice and Procedure adopted by the Supreme Court of Illinois. Appellants contend that action of the trial court in granting the new trial is contrary to law and constitutes an abuse of discretion of the trial court.

It appears that witnesses for the defendants were paid $2 per day for their attendance in court in excess of the statutory allowance to the witnesses. It also appears that this fact was brought out during the trial in the examination of the witnesses, and the court, jury, and counsel for the plaintiff, appellee, were fully advised of the situation, and that the plaintiff did not request the court to declare a mistrial, nor did counsel for plaintiff, appellee, take other action in respect thereto, except in their address to the jury. Plaintiff's attorneys made the following argument to the jury on this subject:

"What evidence has the defense to offer in this case? Paid witnesses of the insurance companies. Witnesses who would testify to anything for a few dollars. We don't do that down in this county. I don't need to tell you men the type of witnesses the defense has brought here before you. We didn't discover that these witnesses were paid until yesterday, when Mr. Wettaw saw this man who is working for the insurance companies paying these witnesses $2.00

a day for their time, right out in the ante room, where you men could see it right through the glass door. Are you going to believe the testimony of witnesses who were paid by the insurance companies to come in and testify?''

It also appears (from the statement of the trial court with reference to the granting of a new trial) that during the trial a representative of the defendants was almost continuously moving in and out of the court room after each witness would testify, and that such representative passed to the counsel table after each such trip and conferred with counsel. It further appeared that payment of the witnesses above referred to occurred just outside the court room and in view of the jurors. Complaints were made to the court by citizens other than those involved in this suit to the effect that the above noted practices were lowering the dignity of the court.

The trial court in a written statement of reasons for granting a new trial said in part:

''When the motion for new trial was presented, together with the affidavits submitted, which bore out the complaints which had been made to the court and also the things which the court observed, the court felt that in order that the courts may have a high standing in the minds of officers of courts and citizens who partake therein or observe, and that no criticism or suspicion that unjust things could be permitted in courts, the action of the court in granting the motion for a new trial was actuated principally in the desire to maintain the high prestige of the judiciary of this State which has been from time immemorial universally recognized.''

While the motion for new trial also submitted that the verdict of the jury was contrary to the law, and contrary to the manifest weight of the evidence, it was presented, argued, and granted principally on

account of the foregoing irregularities in the trial of the case. This court has carefully reviewed the evidence and finds ample evidence from which the jury could reasonably arrive at the verdict rendered. The defendant's theory that the fall of the building was not caused by windstorm is supported by the weight of the evidence.

The matter of payment of witness fees in excess of the statutory allowance has been previously considered by the courts of Illinois. In *North Chicago Street R. Co. v. Anderson,* 176 Ill. 635, on p. 640, the court clearly indicates that such matter goes to the weight of the testimony and is a matter for the consideration of the jury. The court there said, approving a modification of an instruction: "The same observation holds good as to Instruction No. 23 asked by appellant which was to the effect, 'the fact that a witness has been promised pay for time lost while attending the trial of this case does not in anywise tend to impeach his credibility as a witness,' and which the court modified by an addition advising the jury that they might consider the fact that the witness had been promised pay, together with all the other facts in evidence, in determining the weight of the testimony of the witness." In *Tague v. Chicago City Ry. Co.,* 181 Ill. App. 346, on p. 348, the court said of a similar agreement: "There is nothing in the record to support the belief that they perjured themselves. The fact, freely admitted, that defendant promised to make good any wages they might lose while attending court, is hardly sufficient alone, in view of all the other evidence to justify such a belief." In *Chicago West Division Ry. Co. v. Conley,* 43 Ill. App. 347, on p. 349, the court said: "Whatever handle before a jury may be made of such payments, by an attorney gifted with extraordinary powers of invective, it ought not to impeach the credibility of witnesses that a party liti-

gant does not insist, even as to resident witnesses, upon its legal right to compel them to attend in its behalf even at a loss to themselves.''

In view of these holdings, and in view of the full advantage taken by counsel in examination of witnesses and argument to the jury, it would not be proper for the trial court to order a new trial on the sole ground of payment of witness fees slightly in excess of the statutory allowance. It is difficult to arrive at the conclusion that the plaintiff was prejudiced by these facts.

The other conduct of the defendants referred to by the trial court, especially the annoyance to those conducting the trial and the payment of witnesses within sight of the jury, undoubtedly tended to affect the dignity and honor of the court. It created an unseemly appearance and it deserved the reprimand of the court. However, the plaintiff did not seek to have a declaration of mistrial. The disturbances stopped when the court ordered them stopped. Plaintiff chose to speculate on the verdict. The language of the court in *Chicago & Erie R. Co. v. Meech,* 163 Ill. 305, on p. 317, seems appropriate here: ''It is finally urged that the Superior Court erred in not granting a new trial for prejudicial conduct of the plaintiff in the presence of the jury. This contention has reference to the transaction to which allusion has just been made. The fact that a plaintiff or defendant or witness or any other person suddenly swoons or faints or gives vent to hysterical exclamations, or breaks down with hysteria does not call for the granting of a new trial,—and especially when the party claiming to be prejudiced does not ask for the withdrawal of a juror and continuance of the case, *but lies by and speculates on his chances for a verdict.* It is hardly probable that the occurrence in question affected, in any way, *the verdict. If it had any effect, it was as likely to prejudice as to help the case of the plaintiff.*'' In the case of

*Mastin v. National Tea Co.*, 278 Ill. App. 60, on pp. 63 and 64, the court said on this subject: ''The trial proceeded and the defendants continued to offer evidence. The failure of the witness to return was not made the subject of any objection at any time during the trial, and no doubt if it had been properly called to the attention of the trial court, a motion for leave to withdraw a juror and the case continued would have been considered. *The defendants speculated as to the outcome of the cause, and having submitted the cause to the jury, are not now in a position to complain.* If the witness Snell was subject to punishment for contempt of court in failing to return, such action should not have deprived the plaintiff of the benefit of the testimony of this witness.''

It is true that the trial court has more latitude in passing on the verdict of a jury than this court has. *Gavin v. Keter*, 278 Ill. App. 308, on p. 315; *Adamsen v. Magnelia*, 280 Ill. App. 418, on p. 422. The trial court here has given a written statement of reasons for granting the motion for new trial, a procedure recommended by the First District Appellate Court in the case of *Gavin v. Keter, supra*, p. 316. From such statement we are enabled to determine that the granting of the motion was based upon the irregularities we have noted rather than upon the weight of the evidence. While the trial court is entitled to wide discretion in such matters the action of the trial court is nevertheless subject to review, and in a similar case such action has been reversed: *Mastin v. National Tea Co.*, 278 Ill. App. 60, on p. 64.

The trial court erred in granting a new trial of the cause. The order of the circuit court of Saline county granting a new trial will therefore be reversed and the cause remanded to the circuit court with directions to enter judgment for the defendants in accordance with the verdict.

*Reversed and remanded with directions.*