[No. 7213. Decided June 4, 1908.]

G. J. SAUERS *et al.*, *Appellants*, v. PAUL SMITS, *Respondent*.[1]

PHYSICIANS AND SURGEONS—MALPRACTICE—EVIDENCE—SUFFICIENCY—QUESTION FOR JURY. Upon conflicting evidence in an action for malpractice in treating a foot by exposure to X-rays, the question of the negligence of the defendant is for the jury, where there was evidence warranting a finding that the foot was severely burned by the X-rays, and the treatment improper, and that the injury was caused by negligence in placing the tubes too near and without any shield.

SAME—LIABILITY—DEFENSES—IGNORANCE OF PHYSICIAN. Ignorance as to the effect of X-ray exposures would be no defense to an action for malpractice in negligently causing an X-ray burn, but rather might make the use thereof negligence *per se*.

SAME—INSTRUCTIONS—CONTRIBUTORY NEGLIGENCE OF PATIENT. In an action for malpractice in negligently causing an X-ray burn of a foot, it is error to instruct the jury that the plaintiff could not recover if she quit the treatment before she should have done so, or if she failed to follow the physician's directions with reasonable care; since such acts adding to the damages did not co-operate in causing the injury or bar a recovery for the injury done.

SAME. In such a case, it is error to instruct that any injury resulting from the negligence of the patient would bar a recovery.

Appeal from a judgment of the superior court for Chehalis county, Irwin, J., entered July 23, 1907, upon the verdict of a jury, rendered in favor of the defendant, after a trial on the merits, in an action for malpractice. Reversed.

*W. H. Abel & A. M. Abel*, for appellants.

*J. B. Bridges*, for respondent.

[1]Reported in 95 Pac. 1097.

RUDKIN, J.—This action was instituted to recover damages for malpractice. Without going into the details of the complaint, the substance of the plaintiffs cause of action is that, during the early part of the year 1906, the plaintiff Mrs. Sauers was suffering from an ailment of the foot and applied to the defendant, who is a regularly licensed physician and surgeon, for treatment. The treatment prescribed and administered consisted in the daily exposure of the affected member or part to the light and rays of an X-ray machine, for a period of about a month, each exposure lasting from fifteen to thirty minutes. After this course of treatment had continued for some two weeks, the foot began to swell, itch and burn. The treatment continued for about two weeks longer, at the expiration of which time the entire left side of the foot from the toe to the heel was severely burned, so that the skin came off and a large angry sore involving the whole side of the foot was formed; and by reason of the treatment prescribed the foot is permanently injured, the patient has been rendered a cripple for life, and the injury will probably necessitate the amputation of the foot. The negligence charged is that the defendant failed to shield or protect the foot from the X-rays; that he should have discontinued the X-ray treatment as soon as the burning and scalding of the foot made its appearance, and that the tube or bulb of the X-ray machine was placed too close to the foot. Issue was joined on the complaint, and from a judgment and verdict in favor of the defendant, the plaintiffs have appealed.

Two questions have been presented for the consideration of this court: First, the sufficiency of the evidence to warrant the submission of the case to the jury; and second, the accuracy of one of the instructions given by the court. The testimony on the part of the appellants tended to show that there were seventeen daily exposures of the foot to the X-ray machine, except on one date toward the last when the patient was unable to attend the hospital; that no shield was used to

protect the foot from the X-rays; that the tube or bulb of the X-ray machine was placed not to exceed two or three inches from the foot; that the exposures, after the first, lasted from twenty-five to thirty minutes; that, at the expiration of about two weeks from the first exposure, the foot became very red and itched and burned, and that this condition grew gradually worse from day to day until the patient was no longer able to go to the hospital; that thereafter the respondent attended the patient once at the home of her brother-in-law where she was stopping, but did not call on the following day, and another physician was called in; and that after the fifth exposure to the X-rays a medicated paste was spread over the affected part, which was about the size of a nickel. There was further testimony tending to show that, at the close of the respondent's treatment, there was an X-ray burn of the fourth degree on the foot, which is generally considered incurable.

It is unnecessary to refer to the testimony bearing upon the condition of the patient after this time, as it would only go to the measure of damages, and that question is not before us. The testimony on the part of the respondent on the other hand tended to show that the number of exposures was about ten; that the tube or bulb was placed from four to six inches from the foot; that the exposures occurred only every other day, and lasted from eight to eighteen minutes; that the red or burnt appearance of the foot was caused by the paste, and not by the X-rays; that the patient had used her foot contrary to instructions, and by reason thereof the paste spread from the affected part to other parts of the foot; that there was no X-ray burn of any kind; that the treatment was proper, and that at the time of the trial the foot was entirely cured, and in a healthy condition.

There was further testimony on the part of the respondent tending to show that the X-ray is comparatively a new discovery, and was not well understood by physicians and sur-

geons practicing in such communities as Aberdeen at the time this treatment was given. The appellants denied that the patient had disobeyed instructions, or that the paste had spread from the affected part to other portions of the foot, or that the condition of the foot was caused by the paste. It will thus be seen that there was a direct conflict in the testimony on many essential points. The jury would have been authorized in finding that the injured foot was severely burned by the X-rays, that the treatment was improper, and that the injury was caused by one or more of the acts of negligence charged in the complaint. If it should appear that physicians and surgeons in such communities as Aberdeen were as ignorant of the effect of X-ray exposures as some of the testimony tends to show, the jury might well conclude that the use of such a dangerous agency by one who had little or no knowledge as to the probable consequences was negligence *per se*. We are satisfied, therefore, that the motion for a nonsuit and the motion for a directed judgment were properly denied.

The instruction complained of by the appellants is as follows:

"If you find from the evidence that the patient quit the treatment of the defendant before she should have done so, and before he was willing she should quit him, and that any evil results have come from that action on her part, then she would not be entitled to recover. If you believe that the defendant gave her directions as to how she should act and as to how she should treat her foot, how she should use it and take care of it during the time she was treating it, and she did not follow those directions with reasonable care and diligence upon her part, and any injury has resulted on account of that negligence or want of attention or care upon her part, then she would not be entitled to recover."

This instruction was erroneous. If we assume that the patient quit the treatment of the respondent before she should have done so, and before he was willing that she should quit

him, or that she neglected to follow instructions as to how she should use and care for the foot, and injury resulted by reason thereof, the fact remains that these acts of negligence on the part of the patient in no manner concurred with the act of the respondent in burning the foot, if he did so. It would be a harsh doctrine to say that a patient cannot recover for malpractice if any subsequent or independent act of negligence on her part increases or augments the injury caused by the negligence or incompetency of the attending physician, and such is not the law.

As said by Agnew, C. J., in *Gould v. McKenna*, 86 Pa. St. 297, 27 Am. Rep. 705:

"The contributory negligence which prevents recovery for an injury is that which cooperates in causing the injury— some act or omission concurring with the act or omission of the other party to produce the injury (not the loss merely), and without which the injury would not have happened. A negligence which has no operation in causing the injury, but which merely adds to the damages resulting, is no bar to the action, though it will detract from the damages as a whole."

In *Beadle v. Pain*, 46 Ore. 424, 80 Pac. 903, the court said:

"But it will not suffice to defeat the action that the injured party was subsequently negligent and thereby conduced to the aggravation of the injury primarily sustained at the hands of the physician or surgeon, and such conduct on the part of the patient is pertinent to be shown in mitigation of damages only where enhanced thereby, but not to relieve against the primary liability."

See, also, *Carpenter v. Blake*, 75 N. Y. 12; *DuBois v. Decker*, 130 N. Y. 325, 29 N. E. 313, 27 Am. St. 529, 14 L. R. A. 429; *Wilmot v. Howard*, 39 Vt. 447; Thompson, Negligence, § 201; 22 Am. & Eng. Ency. Law (2d ed.), 407.

The statement that *any injury* resulting from the negligent acts of the patient would bar a recovery was, also, too favorable to the respondent. We are therefore of opinion that there was sufficient evidence of negligence on the part

of the respondent to go to the jury, and that the instruction complained of was erroneous. For this error the judgment is reversed and a new trial ordered.

HADLEY, C. J., FULLERTON, ROOT, MOUNT, CROW, and DUNBAR, JJ., concur.