SARAH ANTOWILL, Respondent, *v.* JOSEPH FRIEDMANN, Appellant.

Second Department, June 10, 1921.

**Physicians and surgeons — action to recover for injuries received from X-ray — defendant's proven and undisputed qualifications as physician improperly submitted to jury — sores caused by use of X-ray might have resulted from hypersensitiveness of patient or negligence — improper for court to charge that existence of sores was evidence of negligence.**

In an action against a physician to recover damages for injuries alleged to have been caused by negligent application of the X-ray treatment in which defendant's qualifications as a physician were proven and undisputed it was improper to submit defendant's want of due qualifications to the jury as a possible specification of negligence.

It was error also for the court to charge the jury that the fact that sores resulted from the application of the X-ray treatment by the defendant was evidence of negligence, since it appeared that a few people are supersensitive to X-ray treatment, that the treatment will burn such people although properly applied, and that there is no way of knowing the

disposition of the patient in advance of the test of actual treatment and its results, and since it appeared, also, that the sores might have been caused by improper application of the treatment or by applying a second treatment to a hypersensitive patient where, after the first application, there appeared a redness or soreness in the parts to which the application had been made.

APPEAL by the defendant, Joseph Friedmann, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Westchester on the 26th day of November, 1920, upon the verdict of a jury for $24,486, and also from an order entered in said clerk's office on the 9th day of December, 1920, denying defendant's motion to set aside the verdict and for a new trial made upon the minutes.

*James J. Mahoney* [*George J. Stacy* with him on the brief], for the appellant.

*Abraham Benedict* [*Thomas J. O'Neill* and *David Gorfinkel* with him on the brief], for the respondent.

MILLS, J.:

This action is one to recover damages for personal injuries which the plaintiff, the patient of defendant physician, claims to have received through his negligence in administering to her person X-ray treatment. There is really no dispute about the material facts, except in one respect, as hereinafter specified. Therefore, except as to that matter of controversy, I make the following brief summary of the material facts.

The defendant at the time was, and for several years before had been, a duly educated and licensed physician, specializing in the use of the rather modern method of treatment known as X-ray. He had evidently come to be recognized in the profession as an authority on that treatment. The plaintiff, a widow of forty-four years of age, was suffering from a severe external itching about her private parts, both front and back, without any visible affection to the skin, known as *pruritus vulvae et ani*. For that trouble X-ray application is a recognized and accepted treatment. She consulted her physician, Dr. Michalovsky, and was advised by him to go

Second Department, June, 1921.             [Vol. 197

to the defendant for treatment; and thereafter, on May 17, 1919, she called upon defendant at his office. He examined her and proceeded to apply the X-ray treatment to both affected parts. No question was made by the evidence or is made here, but that, if he applied the treatment as he in his testimony described it, he applied it properly and without any negligence. She returned to him on May twenty-fourth, and he repeated the treatment in substantially the same way. No question as to the manner of that treatment is made if, as hereinafter explained, any should have then been given, which is the real dispute of fact in the case. She returned to him on May thirty-first. He then gave her no treatment, but merely a lotion to be applied to the parts. She did not return to him again. She had then begun to suffer much pain in those parts, as though from burns, and ulcerating sores resulted of an extreme character. She was thereafter treated for a long time at a hospital. There are a few people, probably not more than one out of every 200 to 300, who are supersensitive to X-ray treatment, and apparently that disposition of the patient cannot be known in advance of the test of actual treatment and its results. Such cases are so rare that evidently physician and patient have to take that risk — the one in administering, and the other in receiving, the treatment. It does not appear that plaintiff was ever before subjected to it, and the fair inference is that she had not been. All the experts agreed that if, on May twenty-fourth, the date of the second treatment one week after the first, redness of the external parts had appeared and hair had fallen out, that condition was a sure indication that too much treatment had been given the patient, whether she was normal or abnormal, and that, therefore, the second treatment should not then have been given her. Indeed, defendant testified practically to the same effect, and declared that had there been such redness on May twenty-fourth he would not have given her a second treatment then, or until after three weeks. The plaintiff testified that both the redness and the loss of hair appeared within four days after the first treatment, and were present on May twenty-fourth when the second was given; whereas defendant testified positively that on May twenty-fourth there was no such condition. The plain-

tiff's testimony upon this point was not very explicit, viz., " a little red; " while defendant's was explicit to the contrary. This dispute between the parties themselves presented the only issue of fact in the case.    It was, in my judgment, sufficient to warrant sending the case to the jury, and even to sustain the verdict here as not against the weight of the evidence, and as well to sustain the contrary verdict, had it been rendered.

In that state of the proof we would naturally expect to find that the charge, at least in the end, submitted the case to the jury as to negligence, that is, the issue of liability, upon the specific question whether or not, at the time of the second application of the treatment, those symptoms, redness and loss of hair, had appeared; but the charge contains no such specification, and, indeed, no express notice of that dispute or issue at all.    On the contrary it dealt entirely with generalities in submitting the issue of defendant's negligence — quite contrary, I think, to the usual custom of the experienced trial justice.

In the commencement of the charge he stated the general rule of a physician's duty correctly as we find it given in the accepted authorities, namely, that a physician is bound to have the knowledge and skill ordinarily possessed by members of his profession, and in the particular case to exercise ordinary care in the use of that knowledge and skill in the treatment. I have never been able to appreciate the practical use in giving to the jury the former, viz., the want of general qualification, as a possible specification of negligence, because it stands to reason that whatever the physician's such want may be, if he was not negligent in treating the particular case, he would not be liable.    Herein, as above stated, defendant's qualifications were proven and undisputed.    The main charge thus submitted defendant's want of due qualification to the jury as a possible specification of negligence.    In response to defendant's first request, the learned trial justice reiterated that submission, defendant excepting.    Later, plaintiff's trial counsel, evidently fearful of taking the responsibility of that submission, sought to get the justice to formally withdraw it, so as to devitalize defendant's exception; but upon being put by the justice to an express concession declined to make

it, and thereupon in the end the justice left that matter to the jury as a question of fact for them to decide. It looks very much as though counsel desired to have the benefit of a real submission to the jury of the question, and at the same time to avoid responsibility for it. However that may be, I am convinced that that submission was error strongly prejudicial to the defendant. There was no doubt in the case but that he was duly qualified, and no question of his possible want of such qualifications should have been submitted to the jury.

The main charge further instructed the jury that the result in the sores might be considered by them as some evidence of negligence. Indeed, it was to the effect that the sores constituted sufficient proof to cast upon the defendant the duty or burden of explanation; and in passing upon defendant's request the justice practically reiterated that submission. This again did not satisfy the plaintiff's astute and experienced trial counsel, and he asked an explicit instruction that still the burden of proof throughout rested upon the plaintiff, which was given; but in that very request he asked the reiteration of the instruction that the result of the treatment in this case, that is, the sores, might be regarded " as some evidence of negligence," so that that part of the main charge stood in the end reiterated and emphasized. In my judgment that instruction was erroneous. It having been proven that that specific result might come from proper treatment without negligence on the part of the physician, that is in a case of a hypersensitive person, the mere fact that that result did follow the treatment in this case was in itself no evidence of negligence. The case thus presented was merely one where, according to the proof, the stated result might have followed from the one cause, viz., defendant's negligence, or from another cause, viz., plaintiff's hypersensitiveness; and, therefore, the naked fact of that result was in itself no evidence of the existence of the one cause in preference to that of the other. It would be a work of supererogation to cite authorities upon this point, as the doctrine may now be regarded as elementary, being supported by reason as well as by abundant decisions. I conclude, therefore, that the defendant did not receive a fair trial, and should be granted a new one.

I advise, therefore, that the judgment and order appealed from be reversed and a new trial granted, with costs to abide the event.

BLACKMAR, P. J., RICH, PUTNAM and JAYCOX, JJ., concur.

Judgment and order reversed and new trial granted, with costs to abide the event.