KUEHNEMANN, Respondent, vs. BOYD, Appellant.

*May 5—October 11, 1927.*

*Physicians and surgeons: Malpractice: Degree of skill required: Expert testimony: Patient burned by X-ray treatments: Doctrine of res ipsa loquitur not applicable.*

1. In an action by a patient against a physician for malpractice causing an X-ray burn, the burden is on the patient to prove negligence by the physician in administering the X-ray treatments. p. 591.

2. Evidence that a treatment by a machine using two filters did not produce a burn, while a subsequent treatment with one filter removed did produce one, did not prove that the dosage with one filter removed was an overdosage, or that a treatment with two filters was a normal dosage, but left the question whether the burn resulted from an overdosage or a hypersensitive skin to speculation. p. 591.

3. It is the duty of a physician to exercise that degree of care, diligence, judgment, and skill which physicians in good standing in the same school of medicine usually exercise in the same or similar localities under like circumstances, having regard to the advanced state of medical or surgical science at the time he discharges his legal duty to his patient; and to be liable for malpractice he must be shown to have failed in the requisite degree of care and skill. p. 591.

4. The degree of care and skill which a physician must exercise in treating a patient can only be proved by the testimony of experts, and without such testimony the jury cannot determine whether he failed to exercise the required skill. p. 592.

5. The doctrine of *res ipsa loquitur* is not applicable to malpractice cases between patient and physician, though the injury arises from X-ray treatments. p. 592.

6. Where a physician gives X-ray treatments to patients for

curative or healing purposes, proof of a bad result from such treatments should not constitute proof of negligence by the physician, any more than any other agency applied for curative purposes. p. 592.

7. Undisputed testimony by the physician that the technique and formula used by him conformed to medical standards in the locality must be accepted as the standard of care and skill required of him, and in the absence of evidence to show that he did not meet such degree of care and skill no recovery could be had by the patient. p. 594.

8. Withdrawal of one filter from the machine, if bad practice, could not be defended on the ground that the physician was advised to do so by other doctors; but if proper practice, it is immaterial who induced the physician to pursue such practice. His ignorance is immaterial if his practice is right. p. 594.

9. An instruction that the fact that the patient was burned may be considered as evidence that the physician did not use due care, skill, and judgment in administering the X-ray is erroneous. p. 594.

*On rehearing:*

10. Where the case was tried on the theory that the doctrine of *res ipsa loquitur* applied, and no attempt was made to show that the injury was a result of an overdosage of the X-ray, and plaintiff claims that evidence can be supplied on a retrial that the dosage was excessive, a new trial is granted. p. 595.

APPEAL from a judgment of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge. *Reversed.*

This action was brought by the plaintiff against the defendant to recover damages resulting from alleged malpractice. Judgment for the plaintiff, and the defendant appeals.

For the appellant there was a brief by *Bouck, Hilton, Kluwin & Dempsey* of Oshkosh, attorneys, and *Fawsett & Shea* of Milwaukee, of counsel, and oral argument by *Edmund B. Shea* and *John F. Kluwin.*

For the respondent there was a brief by *Reilly & O'Brien* of Fond du Lac, and oral argument by *J. E. O'Brien.*

The following opinion was filed June 20, 1927:

OWEN, J. The defendant is a physician and surgeon in the practice of his profession in the city of Fond du Lac.

Early in the spring of 1925 he undertook the treatment of a toxic goiter from which plaintiff was suffering. He gave her alternate treatments of the X-ray and the actinic ray. He gave a treatment of each ray once a week for a period of five weeks, when he went to Europe and was absent for about ten weeks. During the period of treatment her condition improved steadily and satisfactorily, and no untoward results of the application of the treatments were observed. No burn resulted and there was nothing to indicate that her skin was hypersensitive to the rays. While in London attending a meeting of a medical society the defendant was told by a doctor that if he would remove one filter from the X-ray machine he would secure quicker results. Upon his return from Europe he renewed the treatments in exactly the same manner that he had administered them prior to his departure for Europe, except that in administering the X-ray he used but one filter in the machine instead of two. His first treatment after returning from Europe was administered on July 21st, in the evening. During that night the patient noticed a soreness and burning at the side of her neck along where the treatment had been administered, and in the morning it was still swollen. During the day the swelling went down, and it seemed to feel better, and she paid no further attention to it. This treatment was given on Tuesday. On Friday night she called on the defendant, told him about the soreness of her neck, that it had swollen and "kind of burned," but that the swelling had gone down. He said he thought perhaps she had taken a cold. On that night he gave her an application of the actinic ray. She noticed no ill effect from that treatment. On the following Tuesday, the 28th, she returned to him for an X-ray treatment. At that time nothing was said about the soreness of her neck. During the treatment on the 28th she noticed a sort of pricking sensation, but "it wasn't bad;" that was all she noticed while she was in the office, but during the night she woke up and there was "a terrible soreness and burning"

on her neck. Next morning she went to his office and asked him what had happened to her neck. He told her she had an X-ray burn, which he treated with the actinic ray. He continued to treat the burn with the actinic ray until October 5th, after which she consulted another physician.

It appears uncontradicted by the expert testimony in this case that an X-ray burn is due either to an overdosage or to a hypersensitive skin, and that there is no way of diagnosing in advance whether the skin of any individual is hypersensitive to the X-ray. It is fundamental that in order to recover in this case the burden is upon the plaintiff to prove negligence on the part of the defendant in administering the X-ray treatments. In order to support the conclusion that the burn was the result of defendant's negligence, it is first claimed that the treatment given prior to the defendant's departure for Europe resulted in no burn, and disproves the fact that the plaintiff had a hypersensitive skin. The defendant admits that in administering the treatment upon his return from Europe he used but one filter in his X-ray machine instead of two, and that this resulted in a greater dosage; but this does not prove that the dosage given after his return was an overdosage, or that the dosage given prior to his departure was a normal dosage. It simply proves that the dosage given in his first treatment did not, while the dosage given in the latter treatments did, burn the skin. It leaves entirely to speculation whether the burn was the result of an overdosage or whether it was due to the hypersensitiveness of the skin. There is no evidence in the case to establish the fact that the dosage from which the burn resulted was an overdosage.

It was the defendant's duty to exercise that degree of care, diligence, judgment, and skill which physicians in good standing in the same school of medicine usually exercise in the same or similar localities under like or similar circumstances, having regard to the advanced state of medical or surgical science at the time he has discharged his legal duty

to his patient.    In order to hold him liable the burden is upon the plaintiff to show that he failed in the requisite degree of care and skill.    That degree of care and skill can only be proved by the testimony of experts.    Without such testimony the jury has no standard which enables it to determine whether the defendant failed to exercise the degree of care and skill required of him.    *Krueger v. Chase,* 172, Wis. 163, 177 N. W. 510; *McGraw v. Kerr,* 23 Colo. App. 163, 128 Pac. 870· *Hunter v. Burroughs,* 123 Va. 113, 96 S. E. 360.

The doctrine of *res ipsa loquitur* is not applicable to malpractice cases between patient and physician.    *Wurdemann v. Barnes,* 92 Wis. 206, 66 N. W. 111; *Finke v. Hess,* 170 Wis. 149, 174 N. W. 466.    The reason for this rule is stated clearly and tersely by Judge TAFT in *Ewing v. Goode,* 78 Fed. 442, in the following language:

"A physician is not a warrantor of cures.    If the maxim '*Res ipsa loquitur*' were applicable to a case like this, and a failure to cure were held to be evidence, however slight, of negligence on the part of the physician or surgeon causing the bad result, few would be courageous enough to practice the healing art, for they would have to assume financial liability for nearly all the 'ills that flesh is heir to.' "

There is some disagreement in the authorities as to whether this doctrine applies where results such as this arise from X-ray treatments.    We can see no reason why the same rule should not apply to X-ray treatments given by a physician to a patient for curative or healing purposes.    The discoveries of science are continually placing in the hands of the physician new agencies with which to cope with disease. Among such discoveries came the X-ray.    It is, undoubtedly, a valuable healing agency, and is coming into quite general use by physicians for treating and curing many diseases. Where physicians minister these treatments to patients for curative and healing purposes—where the *bona fide* relation of physician and patient exists,—we see no reason why

Kuehnemann v. Boyd, 193 Wis. 588.

proof of a bad result should constitute proof of negligence on the part of the physician, any more than when any other agency is applied or ministered. It is said that the X-ray is a dangerous agency, but, as said by the Pennsylvania court, "so is a surgeon's knife. If human ills are to be cured, such instrumentalities must be used. To put upon the medical profession, which must use them, such a burden as financial responsibility for damages, if injury or death results, without proof of specific negligence, would drive from the profession many of the very men who should remain in it, because unwilling to assume the financial risks." *Stemons v. Turner,* 274 Pa. St. 228, 233, 117 Atl. 922. The great weight of authority holds that the doctrine of *res ipsa loquitur* does not apply under such circumstances. *Sweeney v. Erving,* 35 App. Cas. (D. C.) 57; *Antowill v. Friedmann,* 197 App. Div. 230, 188 N. Y. Supp. 777; *Runyan v. Goodrum,* 147 Ark. 481, 228 S. W. 397, 13 A. L. R. 1403; *Street v. Hodgson,* 139 Md. 137, 115 Atl. 27; *Nixon v. Pfahler,* 279 Pa. St. 377, 124 Atl. 130.

In the instant case there is not only no evidence to show that the defendant administered an overdosage of X-ray to the plaintiff, or that the defendant was in any respect negligent in administering the treatment, but the defendant himself testified as follows upon that subject:

"Of the standard authorities that medical men using this kind of instrument follow in this locality, Reimer and Weatherbee is considered one of the best, and Sampson is another. Reimer and Weatherbee have developed a formula for every size filter for goiter cases. The technique I used conformed in every respect to the formula of Reimer and Weatherbee, as to spark gap, mill-amperes, time, and filter. The time, filter, and distance that I used were within the factor of safety of those rules. The next treatment that I gave was given just exactly the same. . . . The technique and formula that I used conformed to medical standards in this locality."

There may be some doubt as to whether the contents of

medical works can be intruded in evidence in this manner, but the defendant's statement that "the technique and formula that I used conformed to medical standards in this locality," being undisputed, must be accepted as the standard of the care and skill required of him, and there being no evidence to show that he did not meet this degree of care and skill there is no evidence to support the verdict for plaintiff.

Some stress is placed upon the testimony of plaintiff to the effect that the doctor told her that the burn was not the result of accident, but that it was due to a lack of knowledge. It is admitted in the case that the doctor withdrew one filter from the X-ray machine because of the advice received by him from the physician in London. If the withdrawal of this filter was in fact bad practice, the mere circumstance that he was advised so to do by the doctor that he met in London would constitute no defense. If as a matter of fact it was the proper practice to withdraw the filter, then it matters not what or who induced the doctor to pursue the practice. His ignorance is immaterial if his practice is right. *Marchand v. Bellin,* 158 Wis. 184, 186, 147 N. W. 1033.

From what has been said it follows that the court erred in the following instruction to the jury:

"If you believe from the evidence that when proper care is used in administering the X-ray in the treatment of goiter a burning of the patient to the extent here shown is not likely to result, under all the circumstances here involved, then the fact that plaintiff was so burned may be considered by you as evidence that the defendant did not use due care, skill, and judgment in administering the X-ray to plaintiff; but in determining this fact you must also consider all the testimony of the defendant as to proper practice and dosage and what dosage he in fact administered, and decide it upon all the evidence bearing upon the point."

This charge told the jury that the fact that plaintiff was so burned may be considered by them as evidence that the defendant did not use due care, skill, and judgment in ad-

ministering the X-ray to plaintiff.   In view of what has been heretofore said, it is apparent that this statement was erroneous.

*By the Court.*—Judgment reversed, and cause remanded with instructions to dismiss plaintiff's complaint.

Eschweiler, J., dissents.

The following opinion was filed October 11, 1927:

Per Curiam.   Upon a motion for a rehearing made by the plaintiff, it is urged that the case was tried upon the theory that the doctrine of *res ipsa loquitur* applied, for which reason no attempt was made to introduce evidence showing that the burn was the result of an overdosage of the X-ray and not by reason of the hypersensitive skin of plaintiff.   It is urged that upon a retrial this evidence can be supplied, and that the case should be remanded for a new trial.   The mandate is therefore amended to read:

Judgment reversed, and cause remanded for a new trial.