CARRIE S. WHITMORE, Appellant, v. JOHN F. HERRICK, Appellee.

MARCH 6, 1928.

*Jaques, Tisdale & Jaques,* for appellant.

*Charles M. Dutcher, Gilmore & Moon,* and *Smith & Work,* for appellee.

KINDIG, J.—John F. Herrick, defendant and appellee, is a physician in the general practice at Ottumwa, and Carrie S. Whitmore, plaintiff and appellant, is a housewife, 57 years of age, living in the same city. She had a callosity on the ball of her right foot, and in 1923 called upon appellee for treatment therefor. Accordingly, the X-ray was used for administering to the ailment. Between February 2d and October 15th of that year, 13 applications of the electric remedy were made. After the 11th exposure, August 21st, an erythema developed, the area became red and inflamed, and the foot was swollen and painful. By September 5th, the portion of the part afflicted turned purple for three quarters of an inch around the callus, and the member was enlarged above the ankle. Two weeks later, the condition was so much worse that the patient could not sleep, and dark discoloration appeared. An abscess developed, causing suffering and agony, and amputation of the limb was threatened.

Contention is made by appellant that the cause of this unsuccessful result was a burn produced by the "X-ray;" while the explanation offered by appellee is that it was brought about through infection under the callus, regardless of the electric contacts. Causes of action relied upon were set forth in three counts of the petition and later amendments thereto. Of these, the first contained no allegation of negligence; while the second and third were based upon specific charges of carelessness and wrongful conduct on the doctor's part, which, it is alleged, were the proximate cause of the injury.

When submitting the issues to the jury, the district court allowed that body to consider only the specially named grounds which asserted lack of required care; however, on the theory that the first division of the petition was by reference made a

part of the said second and third, the substance of the former was included in and submitted with the latter two, under the particularization of wrong acts therein contained. But, notwithstanding the' foregoing, the court refused to allow any relief based upon the allegations ''of the first count,'' in and of themselves separated from the others, because it did not give rise to the *res ipsa loquitur* doctrine, and, such being true, there was no other accusation of wrongdoing. That is to say, the firsl was not dealt with as an independent cause of action.

To correct alleged error in this regard, as well as certain rulings on evidence and failure to give requested instructions, this appeal was taken.

I. At the outset, it is earnestly urged by appellee that the principle of *''res ipsa loquitur''* has no place in this litigation, for the reason, he says, that this is a contest between a patient and her physician, due to claimed malpractice. For authority to sustain this position, reference is made to *Kuehnemann v. Boyd,* 193 Wis. 588 (214 N. W. 326); *Wurdemann v. Barnes,* 92 Wis. 206 (66 N. W. 111); *Finke v. Hess,* 170 Wis. 149 (174 N. W. 466); *Sweeney v. Erving,* 35 App. D. C. 57 (43 L. R. A. [N. S.] 734); *Antowill v. Friedmann,* 197 App. Div. 230 (188 N. Y. Supp. 777); *Runyan v. Goodrum,* 147 Ark. 481 (228 S. W. 397); *Vale v. Noe,* 172 Wis. 421 (179 N. W. 572); *Streett v. Hodgson,* 139 Md. 137 (115 Atl. 27); *Nixon v. Pfahler,* 279 Pa. St. 377 (124 Atl. 130); *Hamilton v. Harris* (Tex. Civ. App.), 204 S. W. 450; *Ewing v. Goode,* 78 Fed. 442; *Tady v. Warta,* 111 Neb. 521 (196 N. W. 901); *Stemons v. Turner,* 274 Pa. St. 228 (117 Atl. 922); *Vaughan v. Memorial Hospital,* 103 W. Va. 156 (136 S. E. 837).

While, on the other hand, appellant strenuously argues that this rule of law (*res ipsa loquitur*) does apply to such status, and that it was her privilege and right to assert it in the instant case involving an ''X-ray'' burn. In substantiation of this declaration, our attention is called to *Shockley v. Tucker,* 127 Iowa 456; *Vergeldt v. Hartzell* (8th Circuit), 1 Fed. (2d Series) 633; *Evans v. Roberts,* 172 Iowa 653; *Welsch v. Frusch L. & P. Co.,* 197 Iowa 1012; *Royal Elec. Co. v. Hevé,* 11 Quebec, K. B. 436; Curtis on The Law of Electricity, Section 597; *San Juan L. & T. Co. v. Requena,* 224 U. S. 89; *Frisk v. Cannon,* 110 Minn. 438 (126 N. W. 67); 2 Jones Commentaries on Evi-

dence (1913) 182, 183, Section 184; *Johnson v. Marshall*, 241 Ill. App. 80; *Loveland v. Nelson*, 235 Mich. 623 (209 N. W. 835); *Holcomb v. Magee*, 217 Ill. App. 272; *Jones v. Tri-State Tel. & Tel. Co.*, 118 Minn. 217 (136 N. W. 741); *George v. Shannon*, 92 Kan. 801 (142 Pac. 967); *Ryan v. St. Paul Union Depot Co.*, 168 Minn. 287 (210 N. W. 32); *Holt v. Ten Broeck*, 134 Minn. 458 (159 N. W. 1073); *Evans v. Clapp* (Mo. App.), 231 S. W. 79; 20 Ruling Case Law 187, Section 156; 21 Ruling Case Law 407; *Sauers v. Smits*, 49 Wash. 557 (95 Pac. 1097); *Delahunt v. United Tel. & Tel. Co.*, 215 Pa. St. 241 (64 Atl. 515); *Hunter v. Burroughs*, 123 Va. 113 (96 S. E. 360).

There appears, however, in the case at bar a barrier to our consideration of these conflicting views. It relates to a matter of pleading. Forsooth, *"res ipsa loquitur"* cannot avail a litigant unless the statement of facts constituting the foundation of the suit are sufficient to warrant its utilization. Fundamentally, this action sounds in tort, and relates entirely to "negligence." Liability, therefore, must be predicated on proximate "negligence," both "pleaded" and proved. *Borland v. Lenz*, 196 Iowa 1148; *Burris v. Titzell*, 189 Iowa 1322. On the other hand, *"res ipsa loquitur"* is not a rule of "pleading," but rather an inference, aiding in the "proof." With those essentials in mind, attention will now be given to the "allegations" concerned.

No assertion is made in the particular "count" under discussion that there was "negligence," either general or special. This, appellant says, was not necessary, in view of the actual contents of the "count," which, as summarized by her, designates:

"That, on August 21, 1923, plaintiff had a corn or callosity on her right foot, and went to defendant, as her physician, for treatment, and he subjected her to exposure of the X-ray. The machine was entirely under his control. The plaintiff had no knowledge as to its use, and no means of controlling it. She was helpless in his hands, and relied upon him for protection, and was without contributory negligence on her part. That by such exposure he inflicted such a severe burn as to cripple her for life; and with this condition apparent to him, and he having knowledge thereof, he persisted in inflicting further exposures

on September 5 and October 15, 1923, to the same area so wounded by him.''

Assuming, without deciding, that the language there employed gave rise to the operation of *"res ipsa loquitur,"* were the charge of ''negligence'' properly made, yet, as before stated, that goes to the ''proof,'' rather than the ''pleadings.'' (Notation is to be made that, under the ''counts'' submitted, the question of the subsequent applications after that of August 21st was given to the ''jury.'') ''Treatment'' here applied may have been proper, for all that appears under the circumstances. Appellant suggests that she did not directly allege ''negligence'' because, having done so, it would be incumbent to prove the same. She undoubtedly had in mind the rule applicable to specific ''allegations,'' as distinguished from general. If ''specific negligence'' is set forth in a given ''count,'' there is no place therein for general assertions. *Kelly v. Muscatine, B. & S. R. Co.,* 195 Iowa 17. And, as hereafter seen, it is the latter only that make applicable *"res ipsa loquitur."* Mistaken conception must have been made by the pleader with reference to the very nature of the action. ''Negligence'' on appellee's part is the only possible reason for permitting appellant to succeed. Without such, there is no chance of recovery. Therefore, proof of this dereliction is imperative; and this is true, forgetting for the moment the question of ''pleading.'' Furthermore, it is evident from the authorities referred to that proof is secondary, and essential allegations furnishing the foundation therefor are primary. Returning again to the language used by the ''pleader,'' it is apparent that neither general nor special ''negligence'' was asserted, and it is only after the necessary averment in that regard that *"res ipsa loquitur"* becomes important; for, even after that essential preliminary has been accomplished, the duty nevertheless remains upon the plaintiff to ''prove'' the ''negligence.'' Assistance in so doing, however, may be through *"res ipsa loquitur,"* which does not relieve the ''pleader'' from the burden of ''allegation,'' but helps such litigant on the ''proof'' through inference that, because of the facts giving rise to the theory, ''negligence'' must have occurred. *Huggard v. Glucose Sugar Ref. Co.,* 132 Iowa 724, aptly states:

''\* \* \* the law itself sometimes raises inferences from proved facts; that is, the proved facts make out a prima-facie

case, sufficient to justify a verdict, unless the defendant goes ahead with his side of the case, and produces sufficient evidence to explain or overcome these facts. This rule has culminated in the Latin maxim, *'res ipsa loquitur'*—the thing speaks for itself."

20 Ruling Case Law 186, 187, Section 156, furnishes the following text:

"The presumption arises, it has been said, from the inherent nature and character of the act causing the injury. Presumptions arise from the doctrine of probabilities. The future is measured and weighed by the past, and presumptions are created from the experience of the past. What has happened in the past, under the same conditions, will probably happen in the future, and ordinary and probable results will be presumed to take place until the contrary is shown. More precisely, the doctrine *res ipsa loquitur* asserts that, whenever a thing which produced an injury is shown to have been under the control and management of the defendant, and the occurrence is such as in the ordinary course of events does not happen if due care has been exercised, the fact of injury itself will be deemed to afford sufficient evidence to support a recovery, in the absence of any explanation by the defendant tending to show that the injury was not due to his want of care."

See, also, *Selby v. Osage Torpedo Co.,* 112 Okla. 303 (241 Pac. 130).

Throughout the country, the courts, almost without an exception, permit the *"res ipsa loquitur"* rule to apply under general, as distinguished from special, "allegations of negligence." Demurrer will not lie in such instance, and a motion for more specific statement could not be successful, if the "general allegation" is properly connected with the facts adaptable to *"res ipsa loquitur." Rawson v. Kansas City Elev. R. Co.,* 129 Mo. App. 613 (107 S. W. 1101) ; *Carlson v. Wells* (Mo.), 276 S. W. 26 ; *Houston v. Lynchburg Traction & L. Co.,* 119 Va. 136 (89 S. E. 114) ; *Birmingham R., L. & P. Co. v. Garrett,* 198 Ala. 445 (73 So. 818) ; *Hines v. Beard,* 130 Va. 286 (107 S. E. 717) ; *Rostad v. Portland R. L. & P. Co.,* 101 Ore. 569 (201 Pac. 184) ; *Carnahan v. Motor Transit Co.,* 65 Cal. App. 402 (224 Pac. 143) ; *Malone v. St. Louis-San Francisco R. Co.,* 202 Mo. App. 489 (213 S. W. 864) ; *Coblentz v. Jaloff,* 115 Ore. 656 (239

Pac. 825); *Selby v. Osage Torpedo Co.*, supra; *Lawrence v. Pickwick Stages*, 68 Cal. App. 494 (229 Pac. 885). See, also, *Leitert v. Pickwick Stages*, 68 Cal. App. 504 (229 Pac. 889); *Reel v. Consolidated Inv. Co.* (Mo.), 236 S. W. 43; *Porter v. St. Joseph R. L., H. & P. Co.* (Mo.), 277 S. W. 913; *Midland Valley R. Co. v. Conner* (8th Circuit), 217 Fed. 956; *White v. Chicago G. W. R. Co.* (8th Circuit), 246 Fed. 427.

If "general negligence" is claimed, then only that, as distinguished from specific averments, will need to be proved; and in the performance of this task, advantage may be taken of the inference arising in a proper case under *"res ipsa loquitur."* True, "negligence" may be shown by circumstantial evidence, yet this refers to "proof," and not the "pleadings." Also, it is clear that the word "negligence" need not always be used in direct terms (nevertheless may be); but it is enough to state facts which on their face disclose "the negligence," to the extent that the allegation will be full and complete within itself, unsupported by presumptions; otherwise there would be no direct "charge." *"Res ipsa loquitur"* is not involved in such event. *Rawson v. Kansas City Elev. R. Co.*, supra. Referring again to the particular facts relied upon by appellant, it is readily seen that there is no direct "allegation" to the point, but rather, a circuitous route is adopted, with the hope that the words and sentences employed will create the "presumption" that there was "negligence." Such might, under proper conditions, be available to render assistance in the proof, if the basic allegation of "negligence" were present; but as a "pleading," it falls short.

Applying the philosophy of appellant to the problem here for solution, then, the situation arises that only a contingent averment of "negligence" exists. Stating the thought in another way, *"res ipsa loquitur"* produces an inference of "negligence;" but it is rebuttable, and when properly refuted by sufficient evidence, entirely overcome. Hence, the predicament appellant finds her "pleadings" placed in can be stated thus: appellee is negligent if he cannot prove himself free therefrom, but in the event he furnishes the necessary "proof," then he is not negligent. Consequently, the very fact that the "inference" or "presumption" is rebuttable ruins its efficiency and serviceability as an "allegation" of "negligence;" for therein

arises the uncertainty or contingency. Because of this, direct-
ness disappears, and with it the very "charge" itself. Fault
with the "allegation" contended for is that it lacks positive-
ness. *Rawson v. Kansas City Elev. R. Co.*, supra.

Consistency exists in what has just been said and Sections
10940, 11108, and 11111 of the 1924 Code, for the very good
reason that, in the premises, a statement of the facts constitut-
ing the appellant's cause of action inevitably would include a
"charge" of "negligence." *Swiney v. American Exp. Co.*, 144
Iowa 342, is relied upon by appellant as authority for her right
to adopt the method here used by her, in order that there may
be available the benefits of *"res ipsa loquitur."* The authority
does not lend support in this regard, for the petition contained
a "general allegation" of "negligence," to the effect that the
hog was "wrongfully handled." As a matter of fact, the dis-
cussion in the *Swiney* case had to do with the distinction be-
tween general and specific "allegations of negligence." Illus-
tration is readily furnished by a quotation therefrom:

"This exception is bottomed upon the thought that plain-
tiff's petition states simply a general charge of negligence, fol-
lowed by the particular specification of the alleged fall of the
crate, to which specification it is claimed plaintiff must be lim-
ited in proof, and that failure therein defeats his right of re-
covery. As we view it, this construction unduly limits the
scope of the petition. * * * The several allegations constituted
something more than a mere general averment of negligence,
followed by a particular statement or specification of the negli-
gent act complained of. Fairly construed, we think they must
be treated as separate and independent averments, and that
failure to prove the alleged fall of the crate is not necessarily
fatal to the plaintiff's action. Moreover, it is to be remembered
that, of the three allegations mentioned, the trial court, in sub-
mitting the case to the jury, withdrew from its consideration all
except the first or general charge. Of this the appellant cannot
complain."

Appellant's position is harmed rather than helped by the
authority named. Similarly, *Thompson v. Chicago & N. W. R.
Co.*, 158 Iowa 234, distinguishes between "general" and "spe-
cific" "allegations of negligence." *Ruebel Bros. v. American
Exp. Co.*, 190 Iowa 600, is to the same effect, because there was

first the necessary complaint concerning the absence of due care. A brief quotation therefrom demonstrates the thought:

"Plaintiff asserts that the death [of a hog] was due to negligence; * * * In this case the pleader limited himself to stating a prima-facie case, to wit, delivery in sound condition and failure to deliver to consignee in like condition. Therefore we have no occasion to consider the cases where, instead of so contenting himself, the plaintiff pleaded specifically."

See, also, *Kelly v. Muscatine, B. & S. R. Co.,* supra.

Eliminating the causes founded upon statutory provisions, there appear to be few, if any, decisions permitting the application of *"res ipsa loquitur"* where the basic pleading does not allege "negligence;" but, on the other hand, in all instances, that requirement has been assumed or directly stated to be essential. Absence of that material statement in the "petition" before us made unnecessary the court's submission of the *"res ipsa loquitur"* issue to the jury. While not material to what has been said on the above subject, but for the purpose of narrating all the historical events, parenthetically it may here be recalled that the items contained in this count were submitted to that body in connection with the "specific" grounds of "negligence" named in the other "counts," and this was done because, by reference in the second and third divisions, the first was made a part thereof.

II. Next, there appear six assignments of error bottomed upon the proposition that portions of the "petition" were stricken, certain instructions refused, and evidence excluded  bearing slightly upon the extent of the injury and amount of damages to be recovered therefor. These matters were accumulative, rather than original in their nature. Before the jury there was much—in fact, abundant—evidence concerning the magnitude of the "injury and damage," and the "charge" to the fact-finding body fully covered the issues thereunder. Manifestly, no prejudice here could have resulted, for the reason that the twelve men whose province it was to pass upon the facts found appellant not entitled to recover any compensation for the injury. *Cooper v. City of Oelwein,* 145 Iowa 181; *McMahon v. Iowa Ice Co.,* 137 Iowa 368. *Cooper v. City of Oelwein,* supra, says:

"But this [an instruction] bore on the amount, and not the right to recovery, * * * and therefore, even if erroneous, * * * could not have been prejudicial, as the right to recover at all was denied by the verdict."

*McMahon v. Iowa Ice Co.*, supra, further suggests:

"The particular matter of complaint is that thereby the court limited recovery to compensation for the pain and suffering endured previous to the trial; * * * We may agree with counsel for appellant that this assumption was unfounded, and hence that there was error. But here again we have the question of prejudice, and are forced to the conclusion that there was none. The jury found for the defendant. Necessary to such a finding was a conclusion that negligence on the part of defendant's employee had not been proven; and this we say because the proof of an injury as alleged was abundant. In this situation, it cannot matter that the rule on the subject of the measure of damages as laid down was incorrect * * * ."

See, also, *Clinton Nat. Bank v. Graves*, 48 Iowa 228; *Martin v. Town of Algona*, 40 Iowa 390.

III. Error is assigned because Dr. E. B. Howell was permitted to give certain testimony over appellant's objection that the same amounted to and was a confidential communication, within the purview of, and therefore prohibited by, Section 11263 of the 1924 Code.

Primarily, this protest of appellant's relates to, first, the doctor's description of the foot's appearance, and second, his answer to an interrogatory calling for his opinion. Many physicians, as well as the appellant herself, had related to the jury a description of the injury, together with the revelation of its nauseating aspect; and moreover she (appellant) had previously voluntarily exposed the member to the jury. Waiver lifts the bar of the legislative enactment, and the circumstances here related constituted such relinquishment. *Woods v. Incorporated Town of Lisbon*, 150 Iowa 433; *Reed v. Rex Fuel Co.*, 160 Iowa 510. See, also, *Blossi v. Chicago & N. W. R. Co.*, 144 Iowa 697; *State v. Masters*, 197 Iowa 1147. We said in the *Woods* case, supra:

"The statute does not absolutely disqualify the physician from testifying, but it places it within the power of the patient to secure medical aid without the betrayal of his confidence.

The patient may, therefore, waive objection, as the statute expressly provides, and permit the physician to testify. The waiver may be made in several ways: It may be done by calling the physician to testify as to privileged matters, or by calling other witnesses to testify to the same facts. Manifestly, if the patient himself breaks the seal of secrecy, and gives publicity to the whole matter, there is a waiver; and this is true whether publicity is given by the testimony of the physician, by the testimony of the patient himself, or by the testimony of his other witnesses. In other words, when the patient voluntarily publishes the occurrences of the sick room, he cannot be permitted to insist that the prohibition and privilege of the statute continues to exist as to his physician. If by his voluntary act he lifts the veil, the professional duty of secrecy ceases, and the physician is a competent witness, under the statute.''

IV. Considering now the second part of this complaint relating to the judgment of the doctor called for, it is apparent that the question involved was in the nature of the hypothetical, which does not amount to a ''confidential communication.'' See *Crago v. City of Cedar Rapids*, 123 Iowa 48. What the witness really did was to say that such ulcer could be caused ''by the presence on the ball of the foot of a callus, without the intervention of an outside agency.'' Said conclusion was not premised upon anything learned through the relation of physician and patient, but rather was drawn from the expert's general knowledge of the subject. Anyway, no objection was interposed to this particular inquiry.

Incorrect ruling of the district court does not here appear.

V. Our final consideration is directed to complaint made because appellant's requested instruction No. 10 was not submitted to the jury. That charge was long, containing several paragraphs, and in fact covered appellant's theory of the entire case, including the doctrine of ''*res ipsa loquitur*'' and others not supported by the ''pleadings'' or the evidence. Embodied deeply in the interior thereof is the following:

''The third count or theory of plaintiff's petition is specific in its allegations of alleged want of care on the part of defendant in making the X-ray exposures on the dates indicated, and

predicates the case upon each of the following contentions: * * * That he negligently used an excessive amount of current in making one or more of the three exposures * * * ''

Exception taken was general, and no grounds therefor were specified. Apparently, the court omitted the particular reference to the excessive amount of current; whether this was done because of insufficiency of evidence or some other cause does not appear. In this regard, however, no ''exception'' was taken to the ''charge'' actually given the jury by the trial court, and appellant's view at this point is that, because she excepted to the failure to give the requested ''instruction,'' containing, among the many other things, this particular element, it was not necessary for her to make any ''exception'' to those actually submitted by the court,—and relies upon the doctrine announced in *Dice v. Johnson,* 187 Iowa 1134; *State v. Cessna,* 170 Iowa 726; *Hanson v. Kline,* 136 Iowa 101. Those authorities would apply, were the question involved simply that of calling the particular subject-matter to the court's attention; for it is true this may be done through a ''requested instruction,'' even though the language used therein is not in all respects correct; for, mistaken though it may be, the general subject, nevertheless, appears. This, however, is not the precise point here. Section 11495 of the 1924 Code provides:

''Any party may take and file exceptions to the instructions of the court, or any part of the instructions given, or to the refusal to give any instructions as requested, * * * but all such exceptions shall specify the part of the instructions as excepted to, or of the instructions requested and refused and the grounds of such exceptions.''

*Anthony v. O'Brien,* 188 Iowa 802, aptly uses this language:

''Neither in the objections or exceptions, nor in the motion for new trial, are the above refused instructions referred to, nor objections to the refusal to give them mentioned in connection with such instructions or such refusal. The defendant contents himself with pointing out generally what the court should have instructed, instead of what it did instruct. It will be observed from the latter portion of the statute above quoted [Section 1, Chapter 24, Acts of the Twenty-seventh General Assembly] that the objections or exceptions are not to instructions refused, but 'to the refusal to give any instructions as requested.' The

exceptions must specify the part 'of the instructions asked and refused and objected to, and the grounds of such objections.' The latter portion of the statute is awkwardly worded; but the very evident purpose thereof, when considered in connection with the context, is that a party may not rely on a mere refusal to give an instruction, but must specify the grounds on which he predicates error in such refusal. There is quite as much reason for requiring this as in exacting specific objection to the instructions, and both are calculated to facilitate corrections of errors in the nisi prius court, and thereby avoid the expense and delay of appellate reviews, as far as possible.''

See, also, *Gibson v. Adams Exp. Co.*, 187 Iowa 1259, and *Hainer v. Churchill*, 191 Iowa 1125.

Merit is lacking in appellant's complaint in this respect because the proposition was not specifically called to the trial court's attention when the "instructions" given were excepted to.

VI. Other matters are argued, but it is not necessary to further discuss them, for the reason that so doing would not change the result.

The judgment and decree of the district court should be, and hereby is, affirmed.—*Affirmed.*

Stevens, C. J., and Evans, Faville, and Wagner, JJ., concur.