Nelson v. Newell, 195 Wis. 572.

NELSON, Respondent, vs. NEWELL, Appellant.

*December 8, 1927—May 8, 1928.*

*Physicians: Malpractice: X-ray burns: Evidence: Sufficiency: Degree of care required: Instruction: That result may be considered in determining negligence: Harmless error: Excessive damages.*

1. In an action to recover for malpractice in negligently applying an X-ray in such a manner as to produce a third-degree burn, testimony of defendant's experts and other evidence is *held* to support a general verdict of the jury in plaintiff's favor, which cannot be set aside on a mere speculation that the plaintiff is one who possesses a hypersensitiveness to the X-ray. p. 576.

2. Absolute certainty that injury resulted from negligence is not required, proof which satisfies the mind of the jury to a reasonable certainty being sufficient. p. 575.

3. A physician operating an X-ray machine is under the duty to exercise that degree of care, diligence, judgment, and skill which physicians in good standing in the same school of medicine usually exercise in the same or similar localities under like circumstances, having regard to the advanced state of medical and surgical science at the time he discharges such duty. p. 576.

4. An instruction that the fact that a bad result followed defendant's treatment of plaintiff may be considered by the jury with all the other evidence in reaching a conclusion as to whether defendant was negligent, is erroneous; but the error is *held* not prejudicial under the provisions of sec. 274.37, Stats. p. 578.

5. In this case an award of $12,500 is *held* not excessive in view of the actual loss of time, the seriousness of the injury, and the pain and suffering endured. p. 578.

APPEAL by defendant from a judgment of the circuit court for Racine county: E. B. BELDEN, Circuit Judge. *Affirmed.*

The action was begun on the 19th day of April, 1927, and the judgment was entered on June 9, 1927. The action is one of malpractice to recover damages from the defendant, a doctor, for negligently and unskilfully applying the X-ray in such a manner as to produce a third-degree burn. The is-

sue was submitted to a jury upon a general verdict, and the jury found in favor of the plaintiff and assessed his damages in the sum of $12,500. After the usual motions after verdict, the court ordered judgment in plaintiff's favor thereon, and from the entry of such judgment this appeal was prosecuted.

For the appellant there were briefs by *Lines, Spooner & Quarles,* and oral argument by *Willet M. Spooner* and *Leo Mann,* all of Milwaukee.

*Robert V. Baker* of Kenosha, attorney, and *Chris A. Juliani* of Milwaukee, of counsel, for the respondent.

The following opinion was filed February 7, 1928:

DOERFLER, J. The defendant denies negligence in his answer, and alleged as a defense that the plaintiff was either hypersensitive to the X-ray or that the burn was due to the cumulative effect of the X-ray in an examination made by another doctor about seventeen days subsequent to the X-ray examination by the defendant. The object of an X-ray examination and the manner of the operation of the machine are quite generally known and have been described to a considerable degree in detail in the cases involving malpractice of physicians based on the X-ray examination or treatment, so that no further explanation herein will be attempted.

On the morning of May 10, 1924, the plaintiff called at the defendant's office in order to ascertain the cause of his apparent ill health, by the use of a fluoroscope. He was subjected to two examinations, one in the morning between the hours of nine and ten, and one in the afternoon of the same day. The defendant testified that in the use of the fluoroscope he applied the usual and standard dose for the purposes of an examination. Plaintiff testified that after the second examination he experienced, while returning to his home, an itching sensation in the small of his back, which became more aggravated from that time on until the fourth or fifth day thereafter, at which time the place where the X-ray was

applied manifested an area of redness in the form of an oblong; that the itching thereafter continued; and that seventeen days after this examination by the defendant he called at the office of one Dr. Fortier, an X-ray specialist of Milwaukee, where three X-ray pictures were taken, the X-ray being applied to the front of his body. Dr. Fortier was not informed at that time of the examinations made by the defendant.

On or about October 1, 1924, it became apparent that the plaintiff suffered from ulcers in the region of his back where the defendant applied the X-ray; and it is undisputed in the case that the ulcers so appearing manifested a third-degree burn. There is also testimony that the ordinary and usual application of the X-ray for purposes of a fluoroscopic examination consists of a dose equivalent to one-twentieth of what is known as an erythema dose, and that an erythema dose is sufficient to create an area of redness at or around the place where the X-ray is applied. Defendant's experts testified that they had never heard of a manifestation of itching within several hours of the examination; that it occurred as a rule between ten and twelve days after the examination; and that an appearance of redness four or five days after the examination is also unusual.

In many of the cases of malpractice in which it is charged that the physician had caused the injury by the negligent use of the radiograph in fluoroscopic examinations, or by an overdose of the X-ray, or by the application of the X-ray for an excessive length of time, the defense is interposed, as in the instant case, that the patient is abnormal and hypersensitive to the X-ray treatment, and this defense has proven itself quite generally successful. It also appears in the evidence that no method has been discovered by means of which it can be determined whether a given subject is hypersensitive to the X-ray. It is undisputed that cases of hypersensitiveness are extremely rare; that an X-ray burn of the third degree constitutes a serious injury, and may re-

sult in permanent injury; that a third-degree burn caused by an X-ray destroys the skin and the deeper tissues of the body and also the blood vessels; and that an operation or operations connected with such an injury are extremely painful.

Dr. Dorr, one of the defendant's experts, testified that he had performed in the neighborhood of 10,000 X-ray examinations of the chest, and numerous other examinations with respect to other parts of the body; that he had in many instances applied the ordinary X-ray dose to infants within an hour after their birth; and that he had never in his practice produced a third-degree burn. Dr. Epperson, also a witness for the defense, confirmed as to his practice Dr. Dorr's experience, but his practice covered in the neighborhood of 25,000 cases. Dr. Perry, the expert for the plaintiff, testified that after an examination of the plaintiff's back shortly before the trial, he was convinced that the injury constituted a third-degree X-ray burn. A hypothetical question put by counsel to Dr. Perry, including substantially all of the facts shown in the evidence, elicited the answer that he knew that the burn was caused by an excessive or improper application of the X-ray, and that in his opinion the injury resulted therefrom.

The ordinary and standard dose, according to the testimony of the defendant, was applied in the instant case. Such a dose consists of one-twentieth of an erythema dose. Dr. Perry also testified that in order to produce a third-degree burn it would be necessary to use at least one and one-half or double an erythema dose. The jury had a right to believe this testimony of Dr. Perry, and, assuming it to be true, it will become apparent even to the mind of a layman that the use of the standard dose for examination purposes leaves an enormous factor of safety.

Absolute certainty that the injury resulted from negligence is not required in the law. Even in criminal cases the rule is that where a jury is satisfied beyond a reasonable doubt, the verdict of the jury will not be disturbed. In civil

cases the rule requires proof which satisfies the mind of the jury to a reasonable certainty. In this connection, therefore, if we consider the testimony of the defendant's experts, Drs. Dorr and Epperson, and in view of all of the other testimony in the case, the overwhelming probability supports the finding of the jury herein and the judgment of the court.

If a verdict such as was rendered in the instant case upon the evidence adduced therein can be set aside upon the ground of a mere speculation that the subject is one who possesses a hypersensitiveness to the X-ray, then it might as well be admitted that cases of this kind cannot be successfully prosecuted. The use of the X-ray in a physician's practice in modern times has become almost indispensable. Its importance cannot be overestimated. It is used in connection with all classes of injuries, and it has proven of inestimable value to mankind during the recent war. The X-ray apparatus has been improved from the time of its invention, so that it has now acquired not only a remarkable degree of efficiency but also of reliability. But, conceding the tremendous value of the X-ray, it must also be admitted that the improper and negligent use thereof may result in injuries and suffering which are appalling; and notwithstanding the efficacy of this remedy, the welfare of mankind requires that a physician who operates an X-ray machine is under the duty to exercise a degree of care, diligence, judgment, and skill which physicians in good standing in the same school of medicine usually exercise in the same or similar localities under like circumstances, having regard to the advanced state of medical and surgical science at the time the physician discharges his legal duty to the patient. *Kuehnemann v. Boyd*, 193 Wis. 588, 214 N. W. 326, 215 N. W. 455.

Seventeen days after plaintiff's visit to the defendant he had three X-ray pictures taken by Dr. Fortier of Milwaukee. It is claimed that the injury resulted from the cumulative effect of the X-ray. The testimony shows that the ray applied

in Dr. Fortier's office was merely for examination purposes and not for treatment, and that it was applied on the front of his body while plaintiff was reclining. Mr. McIntosh testified in general that there is a *possibility* for an X-ray burn to appear on the back, where the ray is applied in the front, but that ordinarily the burn would make itself manifest at the point of application of the ray.

In this case it appeared that the itching sensation was manifested about two hours after the final treatment by the defendant, while ordinarily such a manifestation does not occur before ten or twelve days thereafter. It continued for a long period thereafter, and became more aggravated as time went on. Furthermore, the redness of the skin appeared between four and five days after the visit to the defendant, and it appears that such a manifestation ordinarily does not appear before the expiration of from ten days to two weeks. This, in connection with the testimony of defendant's expert, McIntosh, that the burn ordinarily appears at the point where the X-ray enters the body, and the opinion evidence of Dr. Perry, plaintiff's expert, establishes the basis for a logical conclusion that the burn resulted from the negligent application of the X-ray by the defendant.

Defendant's counsel assign as error the giving by the court of the following instruction:

"You are instructed that the fact that a bad result following the treatment—if you find such was the fact from a consideration of all the credible evidence in the case—is not alone sufficient to charge the defendant with negligence. You are therefore not at liberty to conclude that the defendant was guilty of negligence or malpractice from the mere fact that bad results follow the treatment, *although that fact may be considered, together with all the other evidence, in reaching your conclusion.* The defendant cannot be held liable unless you are satisfied by a preponderance of all the credible evidence in the case, to a reasonable certainty, that he failed to use that skill and care which I have already mentioned and instructed you it was his duty and obligation to exercise in his treatment of the plaintiff, and that such fail-

ure to exercise such care—if you find that he so failed—proximately caused injuries to the plaintiff."

That this instruction constituted error appears from the holdings of this court in the cases of *Kuehnemann v. Boyd,* 193 Wis. 588, 214 N. W. 326, 215 N. W. 455, and *Rost v. Roberts,* 180 Wis. 207, 192 N. W. 38. We do not consider this case as a close one, and therefore conclude that the error is not prejudicial, under the provisions of sec. 274.37 of the Statutes.

Error is also assigned upon the ground that the damages awarded are excessive. We have carefully reviewed the evidence, and in view of the actual loss of time, the seriousness of the injury, and the pain and suffering of the plaintiff, we are satisfied that the amount awarded is supported by the evidence.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on May 8, 1928.